(118 So. 24)

No. 27547.

**ST. LANDRY OIL & GAS CO., Inc., v. NEAL et al.**

July 2, 1928.

John B. Files, Barksdale, Bullock, Warren, Clark & Van Hook, and Blanchard, Goldstein & Walker, all of Shreveport, for appellants.

R. Lee Garland, of Opelousas, and Albert P. Garland, of Shreveport, for appellee.

OVERTON, J. In January, 1919, Emma Garrett and others executed a mineral lease on 5 acres of land in the parish of Claiborne to J. M. Eastham, who, on October 6, 1919, assigned the lease to T. S. Neal, one of the defendants in this case. In December of the same year, Neal assigned the lease to the St. Landry Oil & Gas Company, Inc., the plaintiff herein. The consideration for this assignment was $10,000 cash and $15,000, to be paid out of a certain part of the oil produced from the land. In November, 1920, Neal assigned to W. F. Reynolds a one-third interest in the credit portion of the consideration, stipulated in the assignment to plaintiff, and Reynolds transferred this one-third interest to the Commercial National Bank of Shreveport. In May, 1920, plaintiff assigned a one-half interest in the lease acquired by it to the Tulsa Oil & Gas Company, under a contract by which plaintiff was to pay a certain part of the cost of production. Two wells were drilled on the property under this contract, one of which produced nothing and the other $39,563.99 of oil, which was sold to the Standard Oil Company of Louisiana.

In August, 1920, Emma Garrett, the widow of William Garrett, and various others, including plaintiff, instituted a suit against the heirs of Thornton Bridgeman and his widow to have recognized as valid a correction made in a deed from the Bridgemans to Garrett, and, in the alternative, to reform

two deeds to Garrett by correcting the description of the property therein conveyed. In that case judgment was rendered recognizing the Bridgemans as the owners of the land upon which Emma Garrett and others had granted the lease that was acquired by plaintiff.

Within two months after the foregoing judgment became final, the defendant Neal, who had transferred the lease to plaintiff, obtained from the Bridgemans, who had been decreed the owners of the land, a ratification and confirmation of the lease, executed by Emma Garrett and others to his assignor. Neal had the act of confirmation recorded, and notified plaintiff of its execution and recordation, but plaintiff refused to accept the confirmation.

Some months after the foregoing act of confirmation was executed, plaintiff, urging that it had been evicted by the judgment declaring that the Bridgemans, and not Emma Garrett and others, were the owners of the land upon which the lease was granted, instituted the present suit to recover from Neal the $10,000 paid by it to Neal as the cash portion of the consideration for the assignment of the lease; to recover from him $7,500, one-half of the cost paid by it for drilling a well; also to recover from him $3,353.39, the cost of operations and production incurred by it, and also to annul and rescind the obligation, contracted by it, to pay the credit portion of the consideration for the assignment of the lease made to it by Neal. As Neal had assigned a one-third interest in that part of the consideration to Reynolds, who had assigned that third to the Commercial National Bank, that bank was made a party to the suit.

The defense is that, when Neal obtained the ratification from the Bridgemans, the ratification immediately accrued to plaintiff, and gave him a perfect title to the lease, thereby destroying any right plaintiff might have had

to rescind the sale of the lease to it, and recover the purchase price with damages.

■ Ordinarily, where one sells the property of another—and the rule is equally applicable to the granting or sale of mineral leases —and later acquires title to the property sold by him, the title vests immediately in his vendee. Bonin v. Eyssaline, 12 Mart. (O. S.) 185, 227; McGuire v. Amelung, 12 Mart. (O. S.) 649; Woods v. Kimbal, 5 Mart. (N. S.) 246; Fenn v. Rils, 9 La. 95, 100; Stokes v. Shakleford, 12 La. 170; Lee v. Ferguson, 5 La. Ann. 532; New Orleans v. Riddell, 113 La. 1051, 37 So. 966; Wolff v. Carter, 131 La. 667, 60 So. 52; Brewer v. New Orleans Land Co., 154 La. 446, 97 So. 605.

The foregoing rule admits of exceptions. The first case, in this jurisdiction, in which it was considered when, and under what circumstances, the after-acquired title of the vendor vests in his vendee and when it does not, is the case of Bonin v. Eyssaline, supra, 12 Mart. (O. S.) 185, 227. In that case, the plaintiff, who was still in possession of the property sold him, discovered the nullity of his title, and gave public notice that he would sue his vendor for the rescission of the sale. His vendor took steps to acquire title to the property, and acquired it. Thereafter the plaintiff brought his suit to rescind the sale. The question was raised as to whether, and when, an after-acquired title vests in the vendee of the one acquiring it. The court, in passing upon the question, which was raised by defendant in order to defeat the suit for rescission, expressed the view that, while it was inclined to think that an after-acquired title vested in the vendee of the one acquiring it, if it was acquired at any time prior to final judgment rescinding the sale, yet held that it clearly did so, where the title was acquired prior to the institution of the suit to rescind, and, as the title in that case was so acquired, rejected the demand for rescission.

The same question arose in the case of

Hale v. City of New Orleans, supra, 18 La. Ann. 321. In that case it appeared that the city of New Orleans sold to Thomas Hale certain real estate. In a suit instituted by A. and F. Remy, the Remys were adjudged the owners of the property. Hale then sued to rescind the sale made to him by the city of New Orleans, and to recover the purchase price. The city then acquired the title of the Remys, and urged that the new title acquired accrued to Hale, and hence that his title was perfect. But Hale resisted this contention, and it was held that, having instituted his suit to rescind before the acquisition by his vendor of the newly acquired title, and having thereby evinced his intention not to accept any such title, it could not be held in the face of these facts that the title vested in him.

A similar question arose in the case of Brewer v. New Orleans Land Co., supra, 154 La. 446, 97 So. 605, in which the facts are similar, in essential respects, to those in the Hale Case. In that case, as in the Hale Case, the suit to rescind was instituted prior to the acquisition of the newly acquired title, and the same ruling was made, as was made in the Hale Case, or, in other words, it was there ruled that the new title did not accrue to the plaintiffs therein, and defeat their suit to rescind.

While there are expressions in the Hale Case and in the Brewer Case, and especially in the former, that are suggestive that it is wholly optional with one who has purchased from a person without title whether he will accept an after-acquired title, yet these expressions must be considered in connection with the particular facts of those cases. In either instance the plaintiffs therein might have accepted the after-acquired titles, but, due to their suits to rescind, they had the right to refuse those titles and continue with their suits.

In our view, at least in the absence of an actual eviction working substantial injury, where one purchases from another without title before a suit to rescind is commenced, the title thus acquired vests immediately in the vendee of the one acquiring it, and the vendee cannot sue for a rescission of the sale by which he purchased. He should not then be permitted to sue, because his vendor, under these circumstances, would have fulfilled all of his obligations to him. However, after he has instituted suit to rescind, his suit cannot be defeated by a title acquired by his vendor after the institution of the suit. The new title does not vest in him then, unless he accepts it, for he cannot be forced to retract his steps and dismiss his suit by an after occurrence.

When judgment was rendered by this court, affirming the judgment of the lower court declaring the Bridgemans to be the owners of the land upon which the lease was granted by Emma Garrett and others, plaintiff and its associate, the Tulsa Oil & Gas Company, had ceased operating the lease, with apparently no intention of resuming operations, not because of any defect in the title to the lease, but because the lease had ceased to be productive. At no time was plaintiff or its associate actually disturbed in their operations on the lease. Under these circumstances, and taking into consideration that, shortly after the Bridgemans were declared the owners of the land, the title to the lease was confirmed and ratified, we see no sufficient reason to rescind the sale by which plaintiff acquired the lease, and award plaintiff any part of the judgment for which it asks, including that for the purchase price.

Defendants have sued plaintiff in reconvention for $15,000, the credit portion of the purchase price of the lease, which was made payable out of the proceeds of the first oil produced on the premises. It will be recalled

that Neal assigned one-third of that claim to Reynolds, who, in turn, assigned it to the Commercial National Bank, one of the defendants herein. The bank, in the suit of Neal et al. v. Standard Oil Company of Louisiana, 163 La. 907, 113 So. 142, recovered that one-third. Hence the bank is not now asking for it. But Neal, the remaining defendant herein, is asking for judgment for the remaining two-thirds of the $15,000, with legal interest thereon from August 1, 1921.

In the case of Neal v. Standard Oil Co. of Louisiana, supra, it was found that the interest of Neal in that suit was seized and sold to plaintiff herein, who discontinued the suit as to Neal, thus leaving as the only issue in the case the one-third claimed by the bank. The record in this case does not disclose anything concerning the sale, but Neal concedes in his brief that the sale was made, but says that it was made illegally, and for that reason insists upon judgment against plaintiff. We are clear that, in view of the fact that, as there was a sale of Neal's interest in the Standard Oil Company Case, which included the present claim, Neal is not entitled to judgment in this case for the two-thirds mentioned. However, in view of the fact that the sale apparently occurred after this suit was tried, and in view of the further fact that it is possible that the sale may be illegal, we have concluded, out of abundance of precaution, rather than to reject Neal's claim for that sum absolutely, to nonsuit it only.

The trial court rendered judgment in favor of plaintiff against Neal for the cash portion of the purchase price paid by it for the lease, amounting to $10,000, canceling plaintiff's obligation to pay the credit portion of said lease, rejecting as of nonsuit all other demands of plaintiff, and rejecting the reconventional demands of defendants, but reserving to them whatever rights they may have to sue for an accounting of the oil produced from said lease. This judgment will have to be set aside.

For the reasons assigned, the judgment appealed from is annulled and set aside, plaintiff's demands are now rejected, the reconventional demand of the Commercial National Bank is rejected, and that of said Neal for the remaining two-thirds of said $15,000 is dismissed as of nonsuit; plaintiff to pay the costs in both courts.

O'NIELL, C. J., takes no part.