13 So.2d 712

**McDONALD v. RICHARD et al.**

**Nos. 36850, 36900 and 36901.**

April 12, 1943.

Epley & Favrot, of New Orleans, for appellants I. R. Price and D. G. Laux. Breazeale, Sachse & Wilson and Warren O. Watson, all of Baton Rouge, for other appellants.

Francis J. Whitehead, of Port Allen, and Clyde W. Thurmon and Blanchard, Gold-

stein, Walker & O'Quin, all of Shreveport, for appellee.

O'NIELL, Chief Justice.

There is no dispute about the facts of this case. On June 25, 1929, the Morley Cypress Company sold to Dr. J. A. Richard an undivided half interest in 640 acres of land described as Section 35 in T.7 S., R.11 E., and reserved all of the mineral rights in the land. On July 27, 1936, Dr. Richard, notwithstanding he had no mineral rights in the land, made a sale to D. G. Laux of one-eighth of the mineral rights, declaring in the deed that he, Dr. Richard, owned an undivided half of the mineral rights in the whole section of land, and that it was his intention to sell to Laux one-fourth of his mineral rights. On September 3, 1936, Dr. Richard, having yet no mineral rights in the land, made what purported to be a sale to Laux of a sixteenth interest in the mineral rights in the whole 640 acres of land, declaring again in the deed that he, Dr. Richard, owned a half interest in the mineral rights in the whole section and that it was his intention to sell to Laux one-eighth of his half interest in the mineral rights. On September 5, 1936, Dr. Richard, still having no mineral rights in the land, made what purported to be a sale of a thirty-second interest in the mineral rights to Charles P. Schuh. By the three acts of sale, therefore, Dr. Richard sold—or pretended to sell—seven thirty-seconds interest in the mineral rights which in fact belonged to the Morley Cypress Company.

On September 9, 1936, Dr. Richard sold an undivided fourth interest—being half of his half interest—in the 640 acres of land to Francis J. Whitehead; and on April 11, 1938, Dr. Richard sold his remaining fourth interest in the land to Whitehead. On April 14, 1938, Whitehead sold a fourth interest in the land to Charles G. McDonald, declaring in the deed that the interest sold was the same interest which he, Whitehead, had bought from Dr. Richard on April 11, 1938.

The Morley Cypress Company did not exercise its mineral rights in the land and therefore, on June 26, 1939,—which was at the end of ten years from the date on which the company created the mineral servitude by selling a half interest in the land to Dr. Richard and reserving the mineral rights— the mineral servitude of the Morley Cypress Company was lost or forfeited by the prescription of ten years, as far as Whitehead's and McDonald's interest in the land was concerned.

Charles G. McDonald, as plaintiff in these suits, claims a fourth of the mineral rights in the 640 acres of land by virtue of his being the owner of a fourth interest in the land at the time when the Morley Cypress Company's mineral servitude expired or was forfeited by the prescription of ten years. McDonald brought two suits for the fourth of the mineral rights in the 640 acres of land. One of the suits was brought against D. G. Laux and certain individuals to whom Laux had made what purported to be transfers of parts of his mineral rights. The other suit was brought against Charles P. Schuh and certain individuals to whom Schuh had made what purported to be transfers of parts of his

mineral rights. The defendants in the two suits claimed title to the fourth interest in the mineral rights by virtue of the deeds from Dr. Richard to D. G. Laux and the deed from Dr. Richard to Charles P. Schuh. The two suits were consolidated in the district court and were tried as one suit. The judge gave judgment for McDonald in both suits and the defendants appealed. Some of the defendants in the suit against D. G. Laux et al. took a suspensive appeal and others took a devolutive appeal. All of the defendants in the suit against Charles P. Schuh et al. took a devolutive appeal. The three appeals were consolidated in this court and were heard as one appeal.

■ The question in the case is this: If the owner of a tract of land sells the land and reserves the mineral rights, and if, thereafter, within the period of 10 years, the purchaser of the land sells the mineral rights (which he does not own) to a third party, and if, thereafter, but within 10 years from the date of the sale of the land, the buyer sells it to a fourth party, and if the original seller of the land loses his mineral servitude by the liberative prescription of 10 years for nonuser, to whom do the mineral rights inure,—to the party who bought the mineral rights from one who had no such rights,—or to the party who owned the land at the time when the servitude or mineral rights reserved by the original landowner lapsed by the prescription of 10 years? The judge of the district court decided that, inasmuch as the mineral rights reserved by the Morley Cypress Company were merely a real obligation, or

mineral servitude imposed upon the land, the lapsing of the obligation or servitude inured to the party who owned the land at the time when the obligation lapsed. Our opinion is that the judgment is correct.

■ D. G. Laux and Charles P. Schuh, from whom the defendants claim the mineral rights, did not acquire any mineral rights in the land by virtue of the sales made by Dr. Richard to Laux and Schuh, because Dr. Richard never had any mineral rights in the land. The sales made by Dr. Richard to Laux and to Schuh were in fact sales of property belonging to another,— belonging to the Morley Cypress Company. According to article 2452 of the Civil Code the sale of property belonging to another is null. It is only a relative nullity, in the sense that it may be ratified by the owner of the thing sold. Long v. Chailan, 187 La. 507, 175 So. 42. The purchaser in such a case acquires merely the right to an action of warranty. Brady v. Falgout, D.C., 42 F.Supp. 532. He is entitled of course to the benefit of any title which the seller afterwards may acquire. If, in this instance, Dr. Richard had not disposed of the land, after he sold the mineral rights to Laux and to Schuh, but had remained the owner of the land until the time when mineral rights which had been retained by the Morley Cypress Company lapsed by effect of the liberative prescription of 10 years, Laux and Schuh and their transferees would have acquired thereby the mineral rights which the Morley Cypress Company lost by prescription. Sample .v. Louisiana Oil Refining Corporation, 162 La. 941, 111 So. 336; White v. Hodges,

201 La. 1, 9 So.2d 433. But there is no theory on which Laux and Schuh or their transferees, who are the defendants in this suit, can claim successfully that they acquired from Dr. Richard mineral rights which he never owned—either at the time when or after he made what purported to be sales of mineral rights to Laux and Schuh.

The appellants rely upon article 749 of the Civil Code, which declares:

"He whose estate is incumbered with a servitude, may impose on it other servitudes of any kind, provided they do not affect the rights of him who has acquired the first [servitude]."

The appellants point out that this article of the Code is not an exact translation of the French text of the corresponding article—745—of the Code of 1825. The translation is not a literal translation but the slight departures from the text do not change the purport of the article. The word "affect" is used as a translation of the French word préjudicient, which might be better translated as "prejudice", so that the proviso would read: "provided they [the subsequently imposed servitudes] do not prejudice the rights of him who has acquired the first [servitude]." From this the appellants argue that Dr. Richard, whose half-interest in the land was encumbered with a mineral servitude in favor of the Morley Cypress Company, had the right to impose upon his half-interest in the land mineral servitudes in favor of D. G. Laux and Charles P. Schuh, and that these mineral servitudes in favor of Laux and Schuh could not prejudice or affect the rights of

the Morley Cypress Company, but became effective only when the mineral servitude reserved by the Morley Cypress Company became extinguished by the prescription of 10 years. That argument is unsound because it means that a landowner may impose an interminable series of mineral servitudes upon his land by making a series of sales of the same mineral rights, with the stipulation or understanding that each servitude thus imposed upon the land would take effect only when and if the previously-imposed servitude or servitudes should become extinguished by the liberative prescription of 10 years. If the prescription of 10 years by which mineral servitudes are extinguished for nonuser could be suspended or extended beyond the ten years in that way—by the landowner's making a series of sales of his mineral rights to any number of persons—there would be no reason why he could not accomplish the same result by making a series of sales of the same mineral rights to the same person, with the stipulation or understanding that each servitude thus imposed upon his land would take effect only when and if the previously imposed servitude or servitudes should be extinguished by the liberative prescription of 10 years. The unsoundness of that proposition is in the assumption that a mineral servitude previously imposed is an "obstacle" to the exercise of a mineral servitude subsequently imposed, in the meaning of article 792 of the Civil Code, which provides that the liberative prescription of 10 years for nonuser does not operate against the owner of a servitude if he is prevented from using or enjoying his

servitude by some obstacle which he can neither prevent nor remove. That article has reference only to obstacles which the owner of the servitude has not consented to, either expressly or tacitly. The article is merely an example of the maxim Contra non valentem agere nulla currit praescriptio. Sarpy v. Hymel, 40 La.Ann. 425, 4 So. 439; Hightower v. Maritzky, 194 La. 998, 195 So. 518. The article does not permit a landowner to suspend or extend the period of prescription of 10 years by which servitudes are extinguished for nonuser, by selling his so-called "reversionary interest" in mineral rights, or in a mineral servitude, which he previously imposed upon his land. Even though a sale by a landowner of his so-called reversionary interest in mineral rights which he previously has sold to someone else cannot have effect until and unless the mineral rights previously sold become extinguished by the prescription of 10 years for nonuser, nevertheless the sale of the so-called reversionary interest itself is subject to the liberative prescription of 10 years from the moment of the sale of the so-called reversionary interest. The reason for that is stated in article 3460 of the Civil Code, and was repeated in Hightower v. Maritzky, from which the court quoted in Martel v. A. Veeder Co., 199 La. 423 loc.cit. 439, 6 So.2d 335 loc.cit. 340, thus:

" 'The parties to a contract granting a servitude or real right may impose any restriction or limitation that they see fit to impose upon the use or enjoyment of the servitude or the exercise of the right,— except that they cannot stipulate effectually that the servitude or real right shall not be subject to the prescription of ten years, liberandi causa. The reason for that exception to the freedom of contract is in the fundamental rule of public policy that a debtor, or an obligor in the case of a servitude or real right, cannot renounce in advance the benefit of the prescription which may release him or his land from the obligation. Rev.Civ.Code, arts. 3459, 3460, 3549; Nabors Oil & Gas Co. v. Louisiana Oil Refining Co., on rehearing, 151 La. 361, 91 So. 765; Bodcaw Lumber Co. v. Magnolia Petroleum Co., 167 La. 847, 120 So. 389.' "

There is nothing in the case of Gailey v. McFarlain, 194 La. 150, 193 So. 570, opposed to the doctrine which we have quoted. On the contrary, all that was decided in Gailey v. McFarlain was that the owner of a certain tract of land that was subject to a mineral servitude did not afterwards sell his so-called "reversionary rights", or "reversionary interest", in the mineral rights which he had previously sold. The landowner, McFarlain, had disposed of all of his mineral rights in the land in favor of Louis Fontenot on September 26, 1922, except a sixteenth interest in the mineral rights; and on July 20, 1926, he sold, by what was called the Triche deed, his remaining sixteenth interest in the mineral rights. The parties claiming under the Triche deed claimed not only the sixteenth interest in the mineral rights but also McFarlain's so-called "reversionary interest" in the mineral rights which were conveyed on September 26, 1922, to Louis Fontenot. The court disposed of the claims founded on the Triche deed thus:

"Nowhere in the Triche deed does it appear by express provision that McFarlain intended to sell or Triche et al. intended to purchase McFarlain's reversionary interest in the mineral rights then owned by Louis Fontenot and which mineral rights would vest in McFarlain as the owner of the land, only if Fontenot failed to exercise his rights within ten years from September 26, 1922. * * *"

"It is our opinion that there was no sale or grant in praesenti of McFarlain's reversionary mineral interest in the Triche deed dated July 20, 1926."

* * * * * *

"We have already shown that McFarlain's reversionary interest in Fontenot's mineral rights or servitude was not conveyed to the purchasers in the Triche deed. Since the grantees or the purchasers in the Triche deed and their vendees or assignees were not the owners of McFarlain's reversionary interest, because it was never intended by the parties that this 'certain object' would be included in the sale or grant, there could be no legal reason why the Fontenot mineral rights, which lapsed for nonuse, should vest in the Triche-deed purchasers or grantees, because, under the law, these mineral rights would revest in McFarlain, who was still the owner of the fee simple title and the reversionary mineral interest, as an incident thereto."

The appellants refer to certain expressions in the opinion rendered in White v. Hodges, 201 La. 1, loc.cit. 31, 9 So.2d 433 loc.cit. 443, as maintaining that the granting of a mineral servitude (to a corporation called O'Brien Bros., Inc.) by a land owner (E. C. White), who had previously granted a mineral servitude on the same land to another party, was a grant to O'Brien Bros., Inc., of a so-called reversionary interest, and was not subject to the prescription of 10 years unless and until the first mineral servitude lapsed by prescription. What was said on that subject in White v. Hodges must be construed in connection with the facts of the case. There was no occasion for the court to hold—or intention to hold—and the court did not. hold—that by the sale of a so-called reversionary interest a landowner may encumber his estate with a servitude which will not be subject to the prescription of 10 years from the date of the sale of the so-called reversionary interest. The heirs of White, who had sold the so-called reversionary interest to O'Brien Bros., Inc., subsequently acquired title to the rights which their ancestor, White, had conveyed to O'Brien Bros., Inc. This court held that the title acquired by the heirs of White after White had sold to O'Brien Bros., Inc., mineral rights which White did not own, inured to O'Brien Bros., Inc., under the well-recognized doctrine of after-acquired title. According to that doctrine, if one who has sold property which he did not own afterwards acquires title to the property the title inures to the party to whom he sold it. Bonin v. Eyssaline, 12 Mart. (O.S.) 185; McGuire v. Amelung, 12 Mart. (O.S.) 649; Woods v. Kimbal, 5 Mart. (N.S.) 246; Fenn v. Rils, 9 La. 95; Stokes v. Shackleford, 12 La. 170; Rapp v. Lowry, 30 La.Ann. 1272; City of New Orleans v.

Riddell, 113 La. 1051, 37 So. 966; Wells v. Blackman, 121 La. 394, 46 So. 437; Wolf v. Carter, 131 La. 667, 60 So. 52; Brewer v. New Orleans Land Co., 154 La. 446, 97 So. 605; Guice v. Mason, 156 La. 201, 100 So. 397; St. Landry Oil & Gas Co. v. Neal, 166 La. 799, 118 So. 24; Griffith's Estate v. Glaze's Heirs, 199 La. 800, 7 So.2d 62; White v. Hodges, 201 La. 1, 9 So.2d 433; Wolcott v. Des Moines Navigation & Railroad Co., 5 Wall. 681, 72 U.S. 681, 687, 18 L.Ed. 689.

The defendants pleaded that McDonald was estopped to dispute their claim and based their plea upon a declaration made in the first act of sale by Dr. Richard to Francis J. Whitehead, dated September 9, 1936, and upon a declaration in the sale made by Francis J. Whitehead to Charles G. McDonald on April 14, 1938. The declaration in the sale by Dr. Richard to Whitehead, dated September 9, 1936, follows immediately after the description of the undivided half interest in Section 35, in T.7 S., R.11 E., and is as follows:

"This sale includes and covers one half of the mineral and oil rights of said half section and sales of portions of said oil and mineral rights by vendor to Charles P. Schuh (C.B. 22, Entry 27) and to D. G. Laux (C.B. 21, Entry or folio 635) are not deducted from the sale to vendee herein."

In the second sale made by Dr. Richard to Whitehead, that is, the sale dated April 11, 1938, there was no suggestion that Dr. Richard's title to the fourth interest which he was selling to Whitehead, in the section of land, was subject to any mineral rights or mineral servitude in favor of anyone. The description in the deed was as follows:

"All his [Richard's] rights, title and interest in and to Section Thirty Five (35) in Township Seven (7) South, Range Eleven (11) East, Parish of West Baton Rouge, Louisiana; and said interest being the undivided one fourth (¼) interest thereof."

In the sale by Whitehead to McDonald, dated April 14, 1938, the paragraph on which the appellants base their plea of estoppel follows immediately after the description of the undivided half interest in Section 35, T.7 S., R.11 E., and is in these words:

"The property herein sold being the identical interest in said property acquired by vendor herein from Dr. J. A. Richard by act of date April 11, 1938, and is purchased by the vendee herein subject to all the equities acquired by Francis J. Whitehead in said sale from Dr. Richard; this includes whatever interest that was acquired from Dr. Richard in said sale in the remaining mineral rights and from oil and sulphur rights not disposed of by the said Dr. Richard prior to transferring said property on April 11, 1938, as aforesaid."

The obvious purpose of the declaration which we have quoted from the act of sale made by Dr. Richard to Whitehead on September 9, 1936, was to make it plain that the fourth interest which Dr. Richard was selling to Whitehead, in the section of land, was not affected by the sales which Dr. Richard had made to Laux and Schuh, purporting to convey seven thirty-seconds interest in the mineral rights

which Dr. Richard claimed. We must bear in mind that the total interest of which Dr. Richard made sales to Laux and Schuh purported to be seven thirty-seconds interest, and therefore purported to leave Dr. Richard claiming nine thirty-seconds interest, which was more than one-fourth of the mineral rights in the land. But the declaration that the fourth interest in the land, which interest Dr. Richard was selling to Whitehead, was not affected by the sales which Dr. Richard had made to Laux and Schuh was not an acknowledgment that the sales to Laux and to Schuh were valid sales. It is not at all likely that the question of validity of the sales which Dr. Richard had made to Laux and to Schuh of parts of Dr. Richard's pretended mineral rights was considered, either by Dr. Richard or by Whitehead, in the making of the sale by Dr. Richard to Whitehead. All that they were concerned with was that Whitehead should get his fourth interest in the property free from any rights which Laux or Schuh might have acquired.

Referring now to the declaration which we have quoted from the sale made by Whitehead to McDonald on April 14, 1938, there is in the declaration nothing that amounts to an acknowledgment by the parties that Dr. Richard had sold a part of the mineral rights to Laux and Schuh previous to his sale of the fourth interest in the property to Whitehead, on April 11, 1938,—much less is there any acknowledgment that the pretended sales by Dr. Richard to Laux and Schuh were valid sales. The declaration in the sale from Whitehead to McDonald, on April 14, 1938, is not

well worded; but the substance of it seems to be that the sale should include whatever interest Whitehead had acquired from Dr. Richard in the mineral rights and particularly in the oil and sulphur rights in the fourth interest in the land. The obvious purpose of that paragraph in the deed from Whitehead to McDonald was to protect Whitehead against any possible action in warranty, and at the same time to convey to McDonald whatever interest Whitehead had acquired in the mineral rights in the fourth interest in the land.

A sufficient reason why these clauses in the deed from Dr. Richard to Whitehead and in the deed from Whitehead to McDonald cannot serve as an estoppel in this suit is that the pretended sales by Dr. Richard to Laux and Schuh were made before the declarations were made in the sales by Dr. Richard to Whitehead and by Whitehead to McDonald. And certainly these declarations in the sales by Dr. Richard to Whitehead and by Whitehead to McDonald were not made in the interest of Laux or Schuh, or their transferees, or for the benefit of anyone else but the parties who made the declarations, namely, Whitehead and McDonald.

In the case of Brian v. Bonvillain, 111 La. 441 loc.cit. 462, 35 So. 632, loc.cit. 640, the court, referring to a plea of estoppel founded upon certain recitals in an act of partition of real estate, said:

"General recitals do not estop the parties from disputing the statements made in them. 7 Am.& Eng.Ency.Law, p. 8."

Even if the declaration in the deed from Dr. Richard to Whitehead, dated September 9, 1936, referring to the deeds purporting to be sales of mineral rights by Dr. Richard to Laux and Schuh, should be deemed sufficiently specific to constitute an acknowledgment that the sales to Laux and Schuh were in fact made, the acknowledgment would not bind either Whitehead or McDonald to recognize as valid the sales by Dr. Richard to Laux and Schuh. In the case of Straus v. City of New Orleans, 166 La. 1035, 118 So. 125, 133, it was said:

"The doctrine of estoppel is applicable only to acknowledgments of matters of fact, not to acknowledgments or statements of propositions of law."

In 31 C.J.S., Estoppel, § 37, pp. 214, 215, it is said:

"To found an estoppel the recital must be certain. With this idea in mind, recitals have been classified as being either general or particular; general recitals are such as do not definitely affirm or deny the existence of some fact, or either expressly or impliedly show a clear intention of the parties that either one or the other or both of them shall be concluded from disputing the fact recited, and such recitals do not work an estoppel as to the fact in question. * * *

"Recitals in a deed are estoppels when they are the essence of the contract, that is, where, unless the facts recited exist, the contract, it is presumed, would not have been made. The doctrine of estoppel does not extend to mere descriptive matter or statements or recitals which are immaterial and not contractual or essential to the purposes of the instrument."

The recitals on which the defendants in this case base their estoppel are not acknowledgments that Laux and Schuh acquired any mineral rights from Dr. Richard. On the contrary the recital in the deed from Dr. Richard to Whitehead, dated September 9, 1936, was not that any rights which Dr. Richard had sold to Laux and Schuh should be deducted, but that such rights "are not deducted". And the recital in the sale from Whitehead to McDonald was merely that the sale should include whatever interest Whitehead had acquired from Dr. Richard in the remaining mineral rights and in the oil and sulphur rights not disposed of by Dr. Richard prior to the sale made to Whitehead on April 11, 1938. And, as a matter of fact and law, Dr. Richard did not at any time own any mineral rights in the land. McDonald acquired his fourth interest in the mineral rights directly from the Morley Cypress Company when the company allowed its mineral rights to lapse by the prescription of 10 years.

Our conclusion is that the judge was right in overruling the defendants' pleas of estoppel.

The judgments appealed from are affirmed.

FOURNET, J., concurs in the result.

ODOM, J., absent.