373 So.2d 756 (1979)
Lovelace GREENE et al., Plaintiffs-Appellants,
v.
Roy GREENE et al., Defendants-Appellees.
No. 7050.
Court of Appeal of Louisiana, Third Circuit.
June 29, 1979.
Rehearing Denied August 15, 1979.
*757 Cooper & Sonnier, Silas B. Cooper, Abbeville, for plaintiffs-appellants.
Roger C. Edwards, Abbeville, for defendants-appellees.
Before WATSON, FORET and CUTRER, JJ.
FORET, Judge.
Plaintiffs, Lovelace Greene and his sister, Eva Amelia Greene, filed this suit seeking judicial recognition of certain predial servitudes of drain and aqueduct and for the enforcement of such rights through the issuance of preliminary and permanent injunctions. The defendants, Russell Roy Greene and Warren Greene, are owners of the allegedly servient estate.
The trial court initially granted a preliminary injunction ordering that the plaintiffs be granted access to a road leading to the drainage and irrigation canals used in irrigating plaintiffs' rice fields. After trial on the merits, the preliminary injunction was recalled and the issuance of a permanent injunction denied. From this judgment plaintiffs have appealed.
All litigants in this suit, except Russell Greene, were parties to the act of partition in 1960 which divided a 1300-acre tract of family rice farmland surrounding the 40-acre tract known as "Liberty Farms". Liberty Farms was not a party to, nor was their 40-acre tract affected by, the partition. In 1970, Russell Roy Greene purchased the 40-acre Liberty Farms tract. Sometime thereafter, he exchanged a portion of this tract with defendant, Warren Greene, for other lands (as shown on the attached plat). The aqueduct irrigation canal in question runs through this tract.
Until the spring of 1978, plaintiffs continued to use the aqueduct canal as they had long before and since the partition was executed in 1960. During these years, water from the canal had been used to cultivate crops on the tract of land owned by Eva Amelia Greene (Tract # 1) which has been farmed by Lovelace Greene. To reach this tract through existing canals, *758 water must flow up (Northeast) the Liberty (Zeigler) Canal easterly through the irrigation canal running across the Liberty Farms tract and then northward through the irrigation canal on which a conventional servitude of aqueduct was established in the 1960 Act of Partition. (See the attached map with arrows showing the water flow.)
The water in the canal flows naturally by force of gravity from Liberty Canal eastward across a portion of the land subject to the partition to a dam and water elevation pump located on Tract # 2 of the partitioned property (marked as Point "C" on the attached map). At this point, a re-lift or elevation pump throws water over the dam into a lateral canal, raising the elevation of the water in the lateral canal to a level sufficient to allow the water to again flow by force of gravity across the 40-acre Liberty Farms tract to a water gate located within the servitude at the southeastern corner of the tract owned by Warren Greene (Point "B"). When this water gate is opened, the irrigation water then continues to flow from the gravitational pull down the lateral canal onto Amelia Greene's tract (Tract # 1).
The drainage canal in question has been used to drain Tract # 9, owned by Lovelace Greene. The actual date that this canal has been used from is unclear. (See Tr., pgs. 116, 148, 151 and 170). Although appellant has not described the physical operation of the drainage canal in his brief, the record indicates that water in the canal flows northwesterly by the force of gravity, until reaching the junction with Liberty Canal. At that point, to complete the drainage task, the water must be pumped over a dam into Liberty Canal.
Appellants have submitted to this Court four basic arguments:
(1) That a right of servitude of aqueduct was acquired by virtue of the Act of Partition;
(2) That such servitudes were obtained by acquisitive prescription, LSA-C.C. Articles 740 and 742; and
(3) That from an equitable standpoint, the parties should be estopped from denying them the use of the canal.
(4) That the doctrine of after-acquired title vests a servitude of irrigation in the plaintiffs as to the irrigation canal in question.

I. CONVENTIONAL SERVITUDE ARISING FROM THE PARTITION
The following servitude grant is contained in the 1960 Act of Partition:
"It is further agreed by and among the parties hereto that by these presents create and establish for the benefit of each of the lots taken and received by them in this act of partition, rights-of-ways ans [sic] servitudes for passage as are outlined and indicated in blue on the plats of survey attached hereto and made a part hereof, and irrigation canals as are indicated and outlined in green on said plats of survey as well as the use of the deep water well and an area of 100 ft. North and South by 150 ft. East and West surrounding said well, as is indicated in red on plat of survey "A-2" attached hereto. Said servitudes include all present and existing roads and canals as well as future roads and canals which may be constructed in the area as outlined on said plats."
The major portion of the canal in question is located within the 40-acre Liberty Farms tract. Although the Greene family leased and controlled that tract at the time of and for some time after the partition, they were not the actual owners of the tract. As appellees have pointed out, unless our law provides otherwise, only the owners of an estate are given the right to establish servitudes on or in favor of their estates. Generally, see LSA-C.C. Articles 708-720. The tract containing the disputed irrigation canal was independently owned by Liberty Farms, Inc. at the time the act of partition was passed.
*759 Moreover, the act of partition only granted a servitude upon roads and canals indicated on an attached map and on "future roads and canals which may be constructed in the areas as outlined on said plats." The irrigation aqueduct and drainage canals in question were not designated as reserved canals. Furthermore, the roads and canals involved in this litigation were already constructed and in use when the act of partition was signed in 1960. (Tr., pgs. 116, 119 and 148) It is not clear, but the drainage canal was possibly enlarged in 1965 (compare Tr., pg. 14, 151 and 170), at which time it became the primary drainage canal (Tr., pg. 166). The appellants' claim of a conventional predial servitude of aqueduct is without valid basis.

II. ACQUISITIVE PRESCRIPTION
The second contention of plaintiffs is that they have acquired a servitude across the Liberty Farms tract by acquisitive prescription. As noted above, in order for irrigation water to flow through this canal, it first has to be pumped over a levee and into the canal, and then it flows by gravity through the gate to plaintiffs' lands. This "act of man" (the use of a pump to place water in the canal) makes this a "discontinuous" (and apparent) servitude.
In Nash v. Whitten, 326 So.2d 856 (La.1976), our Supreme Court definitively ruled that a discontinuous servitude cannot be acquired by prescription (but only by title). Despite the plaintiffs' assertions that Nash is in error, it is controlling on this Court, having been re-affirmed by the Supreme Court in Lake, Inc. v. Louisiana Power and Light Co., 330 So.2d 914 (La.1976).
Although plaintiffs do not urge their application, this Court takes note of the 1977 revision of Louisiana Civil Code Articles dealing with predial servitudes.[1] Article 742[2] of the amended Civil Code sets out new law regarding acquisitive prescription of apparent servitudes (the distinction between discontinuous and continuous servitudes being abolished) which at least partially overrules Nash.
As noted, plaintiffs do not urge the retroactive application of this Article; while the legislature intended to give the new law[3] broadest possible application, it did not (and constitutionally could not) intend to grant real rights to some persons by depriving others of their existing rights. See A. N. Yiannopoulos Predial Servitudes, La. Civil Law Treatise, Vol. 4.[4]
In the present situation, if the new articles were applied retroactively, as soon as Article 742 became effective, plaintiffs could possibly claim a servitude on the Liberty Farms tract where none previously existed by citing their prior use of the canal. This would be in derogation of the right of the landowner (Liberty Farms, Inc.'s successor in title, the defendants, Russell Roy Greene and Warren Greene) to retain full possession of their property, by giving a new (and apparently unintended) legal status to the prior use which the landowner allowed.

III. ESTOPPEL
The third contention of plaintiffs is that defendants are estopped to deny them the use of the irrigation canal either because *760 defendant, Russell Roy Greene, became a party to the 1960 act of partition by purchasing part of the encumbered property (and then purchased Liberty Farms) or because of the inclusion in the 1960 plat of the irrigation canal across Liberty Farms. As noted previously, only the owner of an estate can establish servitudes on it and thus while certain lands purchased by Russell Roy Greene were so encumbered, the Liberty Farms tract was not. Liberty Farms, Inc. was not a party to the act of partition which granted the various servitudes.
Even if the plaintiffs were "lulled" into a belief that they could continue using the canal in question, it is definitely established in Louisiana law that:
"A servitude is a legal right and cannot be gained or lost by estoppel." United Gas Pipe Line Co. v. Bellard, 286 So.2d 109 (La.App. 3 Cir. 1973).

IV. ISSUE OF AFTER-ACQUIRED TITLE
Plaintiffs have also raised the doctrine of after-acquired title as a further, or alternative, remedy which would grant them a servitude on the irrigation canal which was located on the 40-acre tract belonging to Liberty Farms, Inc. at the time of the 1960 partition.
Plaintiffs base this contention on the fact that in 1970, one Russell Roy Greene purchased the 40-acre tract from Liberty Farms' descendents in title, Southdown, Inc. On June 8, 1971, Russell Roy Greene and Warren Greene entered into an act of exchange wherein Warren Greene acquired 5.511 acres of the former Liberty Farms' acreage. The acreage acquired by Warren Greene extends to the center line of the irrigation canal in question; the other half, by implication, retained by and apparently still owned by Russell Greene.
Inasmuch as Warren Greene was one of the parties involved in the 1960 partition agreement between the heirs of Walter Greene, plaintiffs claim that the doctrine of after-acquired title grants them a servitude on the irrigation canal in question.
The only person capable of conveying title to property is the owner. La.Civil Code Article 2452. However, when a vendor sells property which he does not own and later acquires title, ownership vests in the vendee. This doctrine is known as the "After-Acquired Title" doctrine. The doctrine has been held to apply to servitudes, Fawvor v. Crain, 6 So.2d 227 (La.App. 1 Cir. 1942), and mineral rights, McDonald v. Richard, 203 La. 155, 13 So.2d 712 (1943), and Lum Chow v. Board of Commissioners for Lafourche Basin Levee District, 203 La. 268, 13 So.2d 857 (1943), St. Landry Oil and Gas Co. v. Neal, 166 La. 799, 118 So.2d 24 (1928).
In the present case, plaintiffs allege that the 1960 act of partition evidences an intent by the co-owners (including Warren Greene) to convey a servitude of aqueduct on the canal in question, where it traverses the Liberty Farms tract, even though the Liberty Farms tract was not then owned by any of the parties to the act of partition (it was independently owned by Liberty Farms, Inc.). Plaintiffs further allege that the act of partition[5] and the attached plat, which is made a part of the act of partition, serve to convey a servitude on this canal for the benefit of plaintiffs. Plaintiffs additionally claim that this "intent" to grant a servitude on the canal is manifested by allowing plaintiffs to use it from 1960 to 1978. The after-acquired title doctrine, plaintiffs claim, comes into effect when defendant, Warren Greene, a signatory to the act of partition, acquired ownership of the canal (or at least up to the center line of it) by a 1971 act of exchange with defendant, Russell Greene.
Defendants urge that there was no intent in the 1960 act of partition to convey the canal in question and that in fact this canal *761 was not a part of the act of partition. The act does not mention or describe the 40 acres or any canal servitude thereon. The 40-acre tract is shown on the plat attached to the act of partition; however, as it is three quarters surrounded by property of the partition, it would be impractical to properly illustrate the situation without Liberty Farms appearing on the plat.
In addition, the plat shows the servitudes created by the act of partition highlighted in green and blue colors. This canal is not among them.
Plaintiffs cite several cases in support of the doctrine of after-acquired title as defined above. St. Landry Oil & Gas Co. v. Neal, supra; Oil Purchasers, Inc. v. Kuehling, 334 So.2d 420 (La.1976); McDonald v. Richard, supra; Fawvor v. Crain, supra. All of these cases are distinguishable from the present situation in that in each case there is a clear intent by the parties to transfer certain described property or rights.
In the present situation, the intent of the parties to convey a servitude over the Liberty Farms property has not been established. The act of partition makes vague references to conveyance of
"all present and existing roads and canals which may be constructed in the area as outlined on said plat."
The attached plat, as noted above, is shaded in blue and green on those areas for which future servitudes are reserved. The canal across Liberty Farms is not so colored, and we cannot conclude that this vague language in the act of partition evidences an intent to create such a servitude thereon.
Generally, in an after-acquired title situation, the vendor purports to own the property in question which he conveys to the vendee who is under the belief that his vendor does in fact own the property. In the present case, all of the parties to the act of partition were aware that the Liberty Farms tract was owned by others. Therefore, none of the participants in the act of partition could establish a servitude on a piece of land which they did not own.
We find the doctrine of after-acquired title inapplicable in the present case.
Two additional issues come to mind, with which we need not be concerned in view of the above disposition of the issue of after-acquired title. The first would be whether liberative prescription has run, or does the doctrine of after-acquired title apply in perpetuity? Another possible issue with which we need not be concerned is the fact that Warren Greene, in the act of exchange with Russell Greene, acquired up to the center line of the irrigation canal. If plaintiffs were to prevail, they would have a servitude only up to the center line of the canal!
In accordance with the above, the judgment of the trial court denying the issuance of a permanent injunction against the defendants to allow the plaintiffs the use of the irrigation canal across Liberty Farms tract is affirmed.
Costs of this appeal are assessed against the plaintiffs-appellants.
AFFIRMED.

[See following illustration]
*762 
NOTES
[1] Acts, 1977, # 514, effective January 1, 1978.
[2] Art. 742. Acquisitive prescription

The laws governing acquisitive prescription of immovable property apply to apparent servitudes. An apparent servitude may be acquired by peaceable and uninterrupted possession of the right for ten years in good faith and by just title; it may also be acquired by uninterrupted possession for thirty years without title or good faith.
[3] Acts, 1977, # 514, See 7

"The provisions of this Act shall apply to all predial servitudes, including those existing on the effective date of this Act; but no provision may be applied to divest already vested rights or to impair the obligation of contracts."
[4] See also Boothe et ux. v. Department of Public Works, et al., 370 So.2d 1282 (La.App. 3 Cir. 1979).
[5] The pertinent part of which is set out in the text above at Page 4.