646 So.2d 973 (1994)
Edison MAYO, Plaintiff-Appellee,
v.
Donald R. SIMON, Sr., et al., Defendants-Appellants.
No. 94-590.
Court of Appeal of Louisiana, Third Circuit.
November 2, 1994.
Rehearing Denied January 18, 1995.
*974 Helton Gayle Marshall, Lake Charles, for Edison Mayo.
Peter Richard Borstell, Gretna, Douglas Michael Schmidt, New Orleans, for Donald R. Simon Sr., et al.
Before GUIDRY, C.J., and KNOLL and WOODARD, JJ.
KNOLL, Judge.
This appeal concerns the applicability of the after acquired title doctrine on immovable property in Calcasieu Parish.
In 1975, in a bond for deed transaction, the plaintiff, Edison Mayo, purchased the property at issue from the defendants, Donald Simon and James Riley (hereafter the sellers). In 1989, after having paid $10,754.02[1] toward the purchase price, Mayo discovered that the sellers did not own the property at the time the bond for deed was executed. Mayo was subsequently successful in buying an 80% interest in the property from a third party, Wilbert Wilder, for $2,382.[2]
In 1990, Mayo brought this litigation against the sellers and their wives, seeking to recover treble the amount paid to sellers and attorney's fees pursuant to the Unfair Trade Practices Law, LSA-R.S. 51:1401 et seq. The trial court did not award treble damages because Mayo did not fulfill all the requirements under the act for treble damages. The trial court awarded Mayo the return of the $10,754.02 he paid to the sellers under the bond for deed, and the $2,382 Mayo paid Wilbert Wilder for an 80% interest in the property, plus $5,000 attorney's fees under the unfair trade practice provisions. The sellers appeal, asking for a return of all awards under the doctrine of after acquired title. Finding that the after acquired title doctrine is inapplicable, we reverse in part, amend, and affirm in part.[3]

*975 AFTER ACQUIRED TITLE DOCTRINE
Defendants argue in brief that the property was inadvertently sold to Mayo when the defendants did not have title to the property, and that since Mayo subsequently bought an 80% interest in the property, the after acquired title doctrine applies. Defendants assert that the after acquired title doctrine served to put Mayo in his original position, such that he had no action for nullity of the bond for deed contract and return of the purchase price. Defendants' argument is misplaced.
The only person capable of conveying title to property is the owner. LSA-C.C.Art. 2452. However, when a vendor sells property which he does not own and later acquires title, ownership immediately vests in the buyer. This concept is known as the doctrine of after acquired title. St. Landry Oil & Gas Co. v. Neal, 166 La. 799, 118 So. 24 (1928); Greene v. Greene, 373 So.2d 756 (La.App. 3d Cir.), writ denied, 377 So.2d 118 (La.1979).
It is clear that the applicability of the after acquired title doctrine is contingent upon the vendor's acquisition of title at some point in time after the purported sale. A third party who subsequently sells good title to the purchaser, as in the case sub judice, does not trigger the after acquired title doctrine in favor of the original seller who never later acquired title. Since neither of the "vendors," Simon and Riley, ever acquired title to the property at issue after the bond for deed contract was executed, by definition, we find that the after acquired title doctrine does not apply and did not operate to vest ownership of the property in the buyer, Mayo.

DAMAGES
As an element of damages, the trial court correctly awarded Mayo $10,754.02, the amount which Simon and Riley received as payments on the bond for deed contract between 1975 and 1989. LSA-C.C.Art. 2452 provides that the sale of a thing belonging to another is null. From this article the jurisprudence has derived the principle that a buyer may recover the price paid to the vendor for property which the vendor did not own at the time of sale. See Bologna Bros. v. Stephens, 206 La. 112, 18 So.2d 914 (1944); Addison v. Thompson, 556 So.2d 195 (La. App. 2d Cir.), writ denied, 559 So.2d 1386 (La.1990). We find no error in this award. However, we do find that the trial court improperly awarded additional damages of $2,382, the amount Mayo paid in 1989 to the third party, Wilbert Wilder, to acquire an 80% interest in the property. By returning this sum, the trial court has, in effect, given the 80% interest to Mayo at the expense of the defendants. In other words, Mayo received the 80% interest in the property for nothing. This is improper and we will delete this award.

UNFAIR TRADE PRACTICES LAW
The Louisiana Unfair Trade Practices and Consumer Protection Law is set forth at LSA-R.S. 51:1401 et seq. Section 1409 provides a private right of action to recover actual damages to "[a]ny person who suffers any ascertainable loss of money or movable property, corporeal or incorporeal, as a result of the use or employment by another person of an unfair or deceptive method, act or practice declared unlawful by R.S. 51:1405...." A plaintiff is entitled to treble damages if he establishes that the defendant knowingly used an unfair trade practice after being put on notice by the Louisiana attorney general. LSA-R.S. 51:1409(A). In addition, the prevailing plaintiff is entitled to recover reasonable attorney's fees and costs. Id.
In the present case, Mayo asserts that the sellers committed an unfair trade practice within the meaning of LSA-R.S. 51:1405 when they purported to sell immovable property which they did not own. We do not reach this issue, however. We find that plaintiff's unfair trade claim, if one existed, has long been extinguished by peremption.[4]
*976 LSA-R.S. 51:1409(E) requires that an unfair trade claim be instituted within one year of the transaction or act which gave rise to the cause of action. This provision is peremptive and cannot be interrupted or suspended, even under the doctrine of contra non valentem. Spencer-Wallington, Inc. v. Service Merchandise, Inc., 562 So.2d 1060 (La.App. 1st Cir.), writ denied, 567 So.2d 109 (La.1990); Canal Marine Supply, Inc. v. Outboard Marine Corp., 522 So.2d 1201 (La. App. 4th Cir.1988).
In the case sub judice, the bond for deed transaction, which Mayo contends gave rise to this cause of action, occurred on April 1, 1975. Any unfair trade claim which Mayo could have made was extinguished by peremption after April 1, 1976. This suit was not filed until April 10, 1990, some fourteen years later. We are aware that Mayo did not learn of the title defect until 1989; however, the jurisprudence is clear that the one year period in which to bring a claim is peremptive, not prescriptive, and cannot be interrupted by contra non valentem. Therefore, we reverse that part of the judgment which awards plaintiff $5,000 attorney's fees based on the sellers' alleged commission of an unfair trade practice.

MOTION FOR A NEW TRIAL
After numerous delays and continuances, trial of the present case was set for December 3, 1993. Although duly noticed of the trial date, no appearance was made by any of the defendants or by their counsel, Douglas M. Schmidt. Mr. Schmidt blamed his absence on his secretary because she did not call the court to advise of a scheduling conflict. After judgment was rendered in favor of the plaintiff, Mr. Schmidt filed a motion for a new trial on the grounds that the defendants were unfairly prejudiced by his failure to appear at trial. The motion was denied by the trial court.
On appeal, the defendants contend that the denial of their motion for a new trial has resulted in "extreme hardship" and "a miscarriage of justice," and suggest that had their attorney "been given the opportunity to present [a] defense, the outcome would have been different." We find no merit in this argument. We have carefully examined the record and find that the evidence presented at trial was sufficient to prove Mayo's claims by a preponderance of the evidence. We also find that Mr. Schmidt's failure to appear at trial, and the reason he supplied for failing to appear, does not merit the granting of a new trial. We conclude that the trial court properly denied the motion for a new trial.

CONCLUSION
For the foregoing reasons, the judgment of the trial court is reversed in part, amended, and as amended, affirmed and rendered. We recast the judgment of the trial court, making these changes.
IT IS ORDERED, ADJUDGED, AND DECREED that there be judgment herein in favor of Edison Mayo and against Donald R. Simon, Sr., Mary Theresa Jeoffroy Simon, James Clay Riley, and Rene Wilder Riley in the sum of TEN THOUSAND SEVEN HUNDRED FIFTY-FOUR AND 02/100 ($10,754.02) DOLLARS, plus legal interest from the date of judicial demand, April 10, 1990, until paid.
Defendants are cast with all costs of trial and of this appeal.
REVERSED IN PART, AFFIRMED AS AMENDED, AND RENDERED.
NOTES
[1] This is the amount stated in the judgment, and thus the figure we consider correct. We note that the amount paid by Mayo to Simon and Riley is stated as $10,754.56 in one of the plaintiff's exhibits introduced at trial, and as $10,764.02 in open court on the day of trial.
[2] Mayo was not successful in purchasing the remaining 20% interest in the subject property from Herman Tezeno.
[3] To facilitate discussion of the issues involved in this appeal, we have briefly sketched the chain of title of the property at issue:

 July 22, 1952Necy Palms sold to Edison Mayo. Thereafter, Mayo mortgaged the property to Associates Financial Services of America.
 January 2, 1970Associates Financial Services of America seized the property to satisfy its mortgage.
 February 11, 1970Edison Mayo sold to Associates Financial Services of America at a Sheriff's Sale.
 February 27, 1970Associates Financial Services of America sold to Wilbert Robert Wilder.
 March 23, 1970Wilbert Robert Wilder sold an undivided ½ interest to Donald R. Simon, Sr.
 June 14, 1971Herman Tezeno purchased a 20% interest in the undivided property at a tax sale (1970 taxes assessed to Edison Mayo).
 May 15, 1972Palermo Realty Development Corporation purchased an 80% interest in the undivided property at a tax sale (1971 taxes assessed to Edison Mayo c/o Wilbert R. Wilder & Donald R. Simon).
 April 1, 1975Edison Mayo purchased the property through a bond for deed contract from Donald R. Simon, Sr. and James Clay Riley.
 November 21, 1977Palermo Realty Development Corporation sold an 80% interest to Joseph R. Palermo, Sr.
 June 18, 1986Joseph R. Palermo, Sr. donated his 80% interest to his six children.
 June 25, 1986The Palermo children sold their 80% interest to The Palermo Company.
 July 12, 1988The Palermo Company sold its 80% interest to The Palermo Land Company, Inc.
 August 4, 1989The Palermo Land Company, Inc. sold its 80% interest to Wilbert Robert Wilder.
 August 15, 1989Wilbert Robert Wilder sold the 80% interest to Edison Mayo.
[4] A peremption is created with an intent to enforce a strict limitation upon certain types of actions. This view is consistent with the legislature's acknowledgment that we may raise this issue on our own motion. LSA-C.C.Art. 3460; see generally Comment, Legal Rights and the Passage of Time, 41 La.L.Rev. 220, 238 (1980).