ROGERS, Justice.
 

 By resolution adopted on September 12, 1941, the Board of Commissioners of the Buras Levee District levied a tax for the year 1941 on all taxable property within the district. Included in the levy was a tax of five mills on the dollar for general levee purposes and a tax of one-quarter of a mill on the dollar for the payment of levee removal damage. The legality of the resolution was attacked on various grounds in a suit brought by Anthony Commander, Jr., and two other residents and taxpayers of the Buras Levee District. Petitioners prayed that the resolution be annulled and for the issuance of a restraining order to prohibit the collection of the alleged illegal taxes. The trial judge refused to grant the temporary restraining order, but granted a rule nisi ordering the Sheriff and ex-officio Tax Collector of the Parish of Plaquemines and the Board of Commissioners of the Buras Levee District to show cause why a preliminary injunction should not be issued restraining the Sheriff and the Levee Board from enforcing the collection of the taxes.
 

 On the day fixed for the hearing on the rule, the Board of Commissioners of the Buras Levee District appeared and filed, first, an exception to the jurisdiction of the court ratione materiae; second, an exception of
 
 no
 
 cause or right of action; and, third, with reservation of its exceptions, an answer to plaintiffs’ petition. The Sheriff and ex-officio Tax Collector appeared and filed an
 
 answer denying the material
 
 allegations of the petition and praying that the rule nisi be recalled and denied.
 

 The case was tried on the exceptions filed by the Board of Commissioners of the Buras Levee District, and they were referred to the merits by the trial judge, because he was of the opinion that the court had jurisdiction of the subject-matter of the suit and that the taxpayers’ application for a preliminary injunction should be heard. Thereupon the Board of Commissioners of the Buras Levee District, alleging that notwithstanding he was without jurisdiction ratione materiae the trial judge had assumed jurisdiction, applied to this Court for writs of certiorari, mandamus and prohibition. The application was granted and, as provided by Section 3 of Rule XIII of the Rules of this Court, the matter has been submitted for decision on the petition of the relator, the returns of the respondents, and the briefs filed on behalf of the parties.
 

 Relator’s complaint under its exception to the jurisdiction of the court ratione materiae is directed at the power of the trial judge to hear and determine the right of the plaintiffs to the conservatory process of injunction asserted by plaintiffs in their suit to obtain the annulment of the levy of an alleged illegal tax. In support of its exception, relator relies on Article 10, Sec
 
 *330
 
 tion 18 of the Constitution of this State, and Act 330 of 1938.
 

 Section 18 of Article 10 of the Constitution of 1921 reads as follows: “The Legislature shall provide against the issuance of process to restrain the collection of any tax and for a complete and adequate remedy for the prompt recovery by every taxpayer of any illegal tax paid by him.”
 

 Act 330 of 1938 amends and reenacts Act 16 of the Second Extraordinary Session of 1934, as amended by Act 23 of the Second Extraordinary Session of 1935, “to carry into effect Section 18, Article X of the Constitution.” Section 1 of Act 330 of 1938 reads as follows: “Be it enacted by the Legislature of Louisiana, That no court of this State shall issue any process whatsoever to restrain the collection of any tax imposed by the State of Louisiana, or by any political subdivision of the State of Louisiana, under authority granted to it by the Legislature or by the Constitution.”
 

 The position of respondents is that Act 330 of 1938 is not applicable to this case because the Buras Levee District is not a political subdivision of this State within the contemplation of the statute. The position of the respondents was maintained by the trial judge and was the basis for his ruling that the exception to his jurisdiction ratione materiae was untenable and that respondents’ application for a preliminary injunction should be heard: The respondents cite decisions from various State courts holding that, in the absence of statutory provisions, irrigation districts, drainage districts, and school districts are not considered as political subdivisions of the state, and, reasoning by analogy, they argue that levee districts likewise can not be considered as political subdivisions of the State. As their argument runs, levee districts are mere agencies or instrumentalities which the legislature may use for the purpose of constructing and maintaining the levee system of the state. Egan v. Hart, 45 La.Ann. 1358, 14 So. 244, and State v. Grace, 161 La. 1039, 109 So. 830, are cited in support of the argument.
 

 Respondents say that, by the adoption of Act 256 of 1910, the Legislature has defined the subdivisions of the State and that the act does not include levee districts among those subdivisions. Respondents also seem to find some support for their position because section 14(a) of Article XIV of the Constitution of 1921 does not include levee districts in the enumeration of subdivisions of the State which, under the constitutional provision, are authorized to incur debt and issue negotiable bonds when authorized to do so by a vote of the majority in number and amount of the property taxpayers qualified to vote, and to impose and collect annually a tax sufficient to pay the interest and principal of the bonds.
 

 While there are decisions, some of which are cited by respondents, holding that irrigation districts, drainage districts, and school districts are not considered as political subdivisions of the 'State, there are other decisions which hold to the contrary.
 

 Broadly speaking, a political subdivision of a state is a subdivision thereof to which has been delegated certain functions of local government. 49 C.J., page 1077. Thus it has been held that a drainage
 
 *332
 
 district is a local subdivision of the state, created for the purpose of administering therein certain functions of local government. People v. Hepler, 240 Ill. 196, 88 N.E. 491.
 

 A sanitary district is a civil or political subdivision of the state, organized to secure, preserve ánd promote the public health. Judge v. Bergman, 258 Ill. 246, 101 N.E. 574; Metropolitan Board of Health v. Heister, 37 N.Y. 661. A school district is a political subdivision of the state. Goldtree v. San Diego, 8 Cal.App. 505, 97 P. 216.
 

 In Standard Oil Co. v. National Surety Co., 143 Miss. 841, 107 So. 559, the Supreme Court of Mississippi held that a drainage district is a political subdivision of the state which created it. The holding of the court was announced in the following lam guage, appearing on page 560 of the opinion in 107 So.: “A political subdivision of a state is a subdivision thereof to which has been delegated certain functions of local government. Drainage districts are created for the purpose of draining and reclaiming wet and overflowed land, and of conserving the public health and convenience, for the accomplishment of which they are vested with the necessary governmental powers, and, consequently, they are political subdivisions of the state by which they are created.” In support of its pronouncement, the court cites 19 C.J. 615; 28 C.J.S., Drains, § 6; Houck v. Little River Drainage District, 239 U.S. 254, 36 S.Ct. 58, 60 L.Ed. 266; People v. Hepler, 240 Ill. 196, 88 N.E. 491.
 

 The Buras Levee District was created by Act 18 of 1894. By Section 7 of the act it is constituted a body politic or political corporation, invested with all the powers inherent in such corporations, with the authority to sue and be sued, to buy and sell property, and to make all necessary contracts. By sections 8, 9 and 10 of the act the Board is given the power to levy taxes to carry out the obj ects contemplated by the act. By Section • 12, et seq., the Board is authorized to issue and negotiate bonds for the raising of additional funds for the use of the district, and the manner of issuing the bonds and creating the funds for the payment of the interest and principal are prescribed.
 

 By Act 72 of 1922 the several levee districts of the State, including the Buras Levee District, are authorized to borrow money from the United States Government for levee purposes and as evidence of the loans to issue negotiable bonds and to levy the taxes necessary to pay the interest and principal of the bonds.
 

 It would therefore appear that the Buras Levee District was created by the Legislature for the purpose of constructing and maintaining the levees within its territorial jurisdiction for the accomplishment of which it is invested with wide governmental powers. Consequently, it is a political subdivision of the State as defined in Standard Oil Company v. National Surety Company and the other cases hereinabove referred to.
 

 The question of whether the levee'districts are political subdivisions of the State
 
 *334
 
 was not involved in the Egan and Grace cases cited hy the respondents. The opinions in those cases merely refer to levee districts as instrumentalities or agencies which the Legislature might use in discharging its duty to maintain a levee system. The decisions do not hold that levee districts were not political subdivisions of the State. Therefore, they are not authority for the question involved in this case.
 

 ’Respondents strongly rely on Act 256 of 1910. The title of that act reads in part as follows: “To define the subdivisions of the State; to prescribe the mode and manner of calling, holding and promulgating the result of elections therein for the purpose of levying a special tax or forced contribution or issuing bonds; to provide for the manner of levying and collecting such tax and issuing bonds;” etc. Section 1 of the act reads in part as follows: “Be it enacted, by the General Assembly of the State of Louisiana, That parishes, wards, cities, towns, villages, school districts, road districts, drainage districts, and sub-drainage districts are declared to be political subdivisions of the State, and special taxes may be levied and debt incurred and negotiable bonds issued therefor as hereinafter provided,” etc.
 

 Respondents argue that by omitting levee districts from its classification of political subdivisions the Legislature has indicated that such districts are not to be so regarded. But the statute, when read as a whole, is not susceptible of such construction. It places levee districts in the same category as school districts, road districts, drainage districts, and sub-drainage districts. Thus in the title itself one of the declared purposes is “to make this Act applicable to levee districts in certain cases.” And Section 30 provides that: “When any election is held by the authority of any Levee Board of this State for the purpose of voting a tax or forced contribution and there is no special law governing such election, then same shall be held under the provisions of this Act as far as practicable.”
 

 The only theory on which the statute can be applicable to levee districts, even in the restricted sense set forth in Section 30, is the theory that the Legislature intended that levee districts, as well as school districts, road districts, drainage and sub-drainage districts shall be regarded as political subdivisions of the State. Any other construction of the statute would present a situation in which sub-drainage districts with their limited governmental powers must be considered as political subdivisions of the State whereas levee districts, with their much wider governmental powers, must be considered as mere functionaries of the State. Such a construction of the statute is inadmissible.
 

 We do not attach any significance to the omission of levee districts from the classification of subdivisions of the State as contained in section 14(a) of Article XIV of the Constitution of 1921. Article 14 of the Constitution, in which the section is embraced, refers to, “parochial and municipal affairs” and has no relation whatever to levees or levee districts. Article 16 of the Constitution contains the provisions relating to the levee system of the State. Sections 1 and 2 permit the various levee boards
 
 *336
 
 to levy taxes for the' construction- and maintenance of levees. Section 3 authorizes the funding of such taxes or other revenues into bonds or evidences of indebtedness to be used for levee purposes. Section 6 provides for compensation to owners whose property has been used or destroyed for levee purposes and authorizes the levying of taxes sufficient to pay for the property so taken or destroyed. It will thus appear that under the Constitution itself levee boards are authorized to exercise many functions of government including the power of taxation, the right of appropriation, and other powers which are inherent in the State itself.
 

 Considering that'the powers conferred on levee districts by constitutional and statutory authority are similar and, in many respects, are greater than the powers conferred by constitutional authority on school districts, road districts, sub-road districts, drainage districts, sub-drainage districts, water works and sub-water works districts, we can find no justification either in law or in logic for holding that levee districts can not be classified as political subdivisions of this State, whereas the other districts we have named must be included in that classification.
 

 Since the Board of Commissioners of the Buras Levee District, the relator herein, must be considered as a political subdivision of the State, respondents’ demand for injunctive relief falls under the bar of Act 330 of 1938, .enacted in pursuance of the mandate contained in Section 18 of Article 10 of the Constitution of 1921. The statute, in express terms, prohibits the court from issuing an injunction to restrain the collection of any tax imposed by a subdivision of the State under constitutional or statutory authority.
 

 For the reasons assigned, the rule nisi herein issued is made absolute, and, accordingly, the ruling of the trial judge referring to the merits relator’s exception to the jurisdiction of the court ratione materiae is set aside, and it is now ordered that the exception be maintained and that plaintiffs’ demand for injunctive relief herein be dismissed; costs of this proceeding to be paid by plaintiffs, respondents herein.