To: Jim Shore General Counsel, Seminole Tribe of Florida
QUESTIONS:
1. To what extent do the special improvement districts created by s. 285.17, F.S., encompass Seminole reservation lands?
2. Are contributions made to these special improvement districts the same as contributions made to a political subdivision of the State of Florida?
SUMMARY:
1. For each of the areas contained within the reservations duly set aside for the Seminole Tribe, there exists a special improvement district with the powers, duties and organization described in s. 285.18, F.S., and
2. Such special improvement districts constitute a "political subdivision" for general purposes of Florida law, but the office of the Attorney General is unable to comment on the status of gifts made to such districts under federal tax law.
Section 285.17, F.S.,[1] provides:
 Special improvement districts; Seminole and Miccosukee Tribes. — There is hereby created a special improvement district for each of the areas contained within the reservations set aside for the Seminole and Miccosukee Tribes, respectively. (Emphasis supplied.)
Section 285.18 further provides that the governing body of the Seminole Tribe of Florida, recognized by the United States and organized under federal law, shall be the governing body of the special improvement districts created by s. 285.17, which encompass Seminole reservation lands. Subsection (2) of s. 285.18
enumerates the duties and powers of the governing bodies of the special improvement districts, paragraph (e) specifically providing that the governing body has the duty and power to "accept gifts, and apply for and use grants or loans of money or other property from the United States, the state, a local unit of government or any person, for any district purpose and may enter into agreements required in connection therewith, and may hold, use, and dispose of such moneys or property in accordance with the terms of the gift, grant, loan, or agreement relating thereto."
Section 285.17 expressly provides that a special improvement district is created for each of the areas contained within the reservations set aside for the Seminole Tribe. This provision delineates and sets or limits the boundaries of each special improvement district. Your inquiry notes that there are currently five separate Seminole Indian Reservation locations: Hollywood, Big Cypress, Brighton, Immokalee, and Tampa. For purposes of this opinion, our office will assume that these reservations have been lawfully "set aside" for the Seminole Tribe, and are recognized as such by the State of Florida and/or the federal government[2]. Assuming that status, and applying this assumption to the express language of s. 285.17, I must conclude that for each of the areas contained within the reservations duly set aside for the Seminole Tribe, there exists a special improvement district with the powers, duties and organization described in s. 285.18.
Your second question asks whether contributions made to such special improvement districts are the same as contributions made to a political subdivision of the State of Florida. Rephrased, your question asks whether special improvement districts fall within the category "political subdivision" of the state. Supplemental information furnished to us by your office states that certain individuals would like to donate land to one of these special improvement districts, but that they are unsure as to the status of such a gift as a charitable deduction under the Internal Revenue Code. I must advise you that our office will be unable to comment on the status of such gifts as charitable deductions under federal tax law; such an issue is a question of federal tax law which our office is not empowered to determine. However, for general purposes of state law, it does appear, in light of the authorities set forth below, that such special improvement districts should be considered political subdivisions of the State of Florida.
72 C.J.S. Political at p. 223 states that the term "political subdivision" is broad and comprehensive and denotes any division of a state made by the proper authorities thereof, acting within their constitutional powers, for the purpose of carrying out those functions of the state which by long usage and inherent necessities of government have always been regarded as public. The broader meaning of the term denotes any subdivision of the state created for a public purpose although authorized to exercise a portion of the sovereign power of the state only to a limited degree. See also Commissioner of Internal Revenue v. Shamberg's Estate, 144 F.2d 998 (2d Cir. 1944). It is further stated that broadly speaking, a political subdivision of a state is a subdivision thereof to which has been delegated certain functions of local government. 72 C.J.S. Political at 223, citing Commander v. Board of Com'rs. of Buras Levee Dist., 11 So.2d 605 (La. 1942). The Florida Court has held that the Board of Commissioners of the Everglades Drainage District was a public quasi corporation, and, as such, a governmental agency of the state for certain definite purposes, having such authority only as delegated to it by law; Forbes Pioneer Boat Line v. Board of Com'rs., 82 So. 346
(Fla. 1919), and has characterized such district as a statutory subdivision of the state for special governmental purposes. Martin v. Dade Muck Land Co., 116 So. 449 (Fla. 1928); see also Dade County v. Little, 115 So.2d 19 (3 D.C.A. Fla., 1959). In Andrews v. Pal-Mar Water Control District, 388 So.2d 4 (4 D.C.A. Fla., 1980), pet. for rev. denied, 392 So.2d 1371, 1373 (Fla. 1980), the Fourth District Court of Appeal, citing AGO 076-87 and s. 1.01(9), F.S. (1975) (see footnote 1.), determined that the district there in question was a political subdivision of the state and was thus immune from ad valorem taxation. Rabin v. Lake Worth Drainage District, 82 So.2d 353 (Fla. 1955) holds that a drainage district partakes of the sovereign immunity of the state. See also Seaboard Air Line R. Co. v. Sarasota-Fruitville D. Dist., 255 F.2d 622 (5th *3239 Cir. 1958). Section 1.01(9), F.S., defines the term "political subdivision" to include "all other districts in this state." The Formation of Local Government Act, ch. 165, F.S., defines "special district" to mean a local unit of special government created pursuant to general or special law for the purposes of performing prescribed specialized functions within limited boundaries. See also s. 218.31(1) and (5), F.S. The special improvement districts created by s. 285.17, F.S., are vested with the power and charged with the duty of planning and implementing public programs in law enforcement, housing, health care and other social services as prescribed by s.285.18(2)(a)-(e), F.S., and it seems clear that such districts are created for public purposes and exercise a portion of the sovereign power of the state. I therefore conclude that such districts constitute "political subdivisions" of the state for general purposes of Florida law.
Sincerely,
Jim Smith, Attorney General
Prepared by: Anne Curtis Terry, Assistant Attorney General
[1] Chapter 81-204, Laws of Florida, contains an amendment to s.285.17 which is effective upon passage of certain federal legislation, but this amendment is not pertinent to the subject of your inquiry since it relates to areas leased to the Miccosukee Tribe by the State of Florida. The remainder of ch. 81-204 relates to other rights of members of the Miccosukee and Seminole Tribes and other Indians not relevant to this opinion.
[2] Note, however, that the status of the Tampa reservation is currently being litigated by the State of Florida.