Dear Mr. Burnett:
Your opinion request to Fred C. Dent, former Commissioner of Financial Institutions, was forwarded to this office for reply. In your capacity as legal advisor to the Caddo Levee District (the District), you have raised several questions relating to the laws applicable to the collateralization of public funds and the selection of a fiscal agent for the District.
Your first two questions relate to the documentation necessary to confect a valid deposit of security under LSA-R.S. 39:1224, which would withstand third party claims, more particularly, claims arising from a bank failure.
You have provided copies of several documents currently being used by the District in connection with the deposit of securities: (1) a solicitation letter, (2) the depository bank's letter to a safekeeping bank, and (3) the corresponding safekeeping receipt. You ask whether it is necessary to prepare additional documents such as a formal act of pledge and an acknowledgment letter by the safekeeping bank to perfect the pledge of security.
For reasons to be discussed, infra, we believe that LSA-R.S.39:1224 is the controlling statute for the deposit of securities for the District. It provides as follows:
 "§ 1224. Security for deposits; authorized depositories
 The bonds, certificates of indebtedness, paving certificates, promissory notes, evidence of participation in promissory notes, and other interest-bearing securities or obligations furnished as security, shall be deposited with the depositing authority or with an unaffiliated bank or trust company or federal reserve bank or any Federal Home Loan Bank or its successor; such security, whether in the hands of the depositing authority or held in safekeeping or trust by any bank, trust company, federal reserve bank or Federal Home Loan Bank or its successor, shall be deemed to be under the control and in the possession of the depositing authority and deemed to be held in its name by the depository bank, trust company, federal reserve bank or Federal Home Loan Bank or its successor. The depository bank or trust company or federal reserve bank must be acceptable to both the depositing authority and the fiscal agent bank, and if these two cannot agree, the commissioner of financial institutions shall designate a depository. Banks or trust companies which are subsidiaries of a bank holding company shall not be considered affiliated for the purpose of this Section."
The adequacy of the documentation necessary to perfect a valid pledge of securities to the end that a depositing authority, whether state or local, has control over same was previously addressed by the Attorney General's Office in opinion numbers 89-559 and 89-559(A). At issue was the custodial practice of an unaffiliated bank serving as the depository for securities pledged as collateral for the deposit of state funds. The safekeeping receipt facially stated "For the account of BUNKIE BANK TRUST CO." Immediately thereunder was the additional notation "PLEDGED TO STATE OF LOUISIANA DEPARTMENT OF THE TREASURER."
In finding the safekeeping receipt defective, the author opined:
 "Whether this safekeeping receipt evidenced custody of securities pledged as collateral for either state, parochial or local funds — that is, regardless of whether R.S. 39:1224 or R.S. 49:322 governed — it does not comply with the requirements of those statutes. The statutory requirements providing for the collateralization of deposited public funds contemplate (1) the pledge of securities of a value equal to 100% of the deposited funds as collateral and (2) the deposit of such securities either with the depositing authority or in a bank or trust company for the account of the public depositing authority.
 These statutes contemplate that the depositing authority have control of the securities, either through actual custody, or through the securities being pledged to the account of the depositing authority.
 The safekeeping receipt does not evidence this necessary control of the securities. It pledges the amount to the account of the bank, and not the depositing authority. This is prohibited by R.S. 49:322."
In a supplemental opinion, the same author reviewed a revised safekeeping receipt from the First National Bank of Commerce. The revised receipt facially provides that the collateral securities are "PLEDGED TO THE ACCOUNT OF [the depositing authority]," rather than the bank. The author concluded that the revised receipt conformed to the requirements of LSA-R.S.39:1224 and 49:322 and approved same as a valid form of security pledge for the deposit of public funds.
Ms. Yvette Rook, State Treasurer's Office, oversees the pledge of securities for the deposit of state funds as per LSA-R.S.49:322. She advised that the State Treasurer has historically considered a safekeeping receipt conforming to Section 322 adequate as to form and legality as a pledge of security for the deposit of public funds. It should be noted that the safekeeping receipt must also identify the securities being pledged.
Ms. Donna Magee, legal counsel to the Federal Deposit Insurance Corporation in Memphis, advised that, for purposes of bank liquidations, a properly executed safekeeping receipt will shield the depositing authority from third party claims. She confirmed that the safekeeping receipt should identify the securities pledged and state that they are pledged for the account of the depositing authority.
While the formal act of pledge and the acknowledgment letter from the safekeeping bank may not be necessary elements for the efficacy of the pledge of securities, they would certainly strengthen same. As stated above, we believe the local depository law to be applicable to the District. We therefore recommend that the third page of your pledge agreement be revised to reflect delivery of the securities to the depositing authority (i.e. the District), or with an unaffiliated bank or trust company or federal reserve bank or any Federal Home Loan Bank in conformity with the language in LSA-R.S. 39:1224.
We also note that the safekeeping receipt attached to your letter does not conform to the provisions of LSA-R.S. 39:1224 in that it provides that securities are pledged "For the account of Louisiana Bank and Trust Company." We recommend that the receipt be modified to reflect that securities are pledged for the account of the District, and not the bank.
Your third question requests assistance in determining which depository law, state or local, governs the deposit of public funds owned by the District. For the following reasons, we are of the opinion that the District's deposits are governed by the laws relating to local depositories found at LSA-R.S. 39:1211, et seq.
The laws relating to levee districts were amended and reenacted by Act No. 785 of the 1985 Regular Session of the Louisiana Legislature. Prior thereto, Chapter 4 of Title 38 consisted of Parts I through IV, which contained provisions relating to levee districts, generally, and Parts V through XXVI, each of which contained provisions relating to particular levee districts. Act 785 had the general effect of consolidating into a single comprehensive scheme the many parallel provisions relating to particular levee districts.
Before this statutory consolidation, there was no general state provision regarding the deposit of funds for all levee districts. Each district had its own statute regarding its organization and powers. This is illustrated in Attorney General Opinion No. 77-1518 released on December 19, 1977. It held that the 1974 Constitution did not give districts the right to use local banks as depositories. It cited, by example, LSA-R.S. 38:957 (now repealed), relating to the Fifth Louisiana Levee District, which provided, in pertinent part, the following:
 ". . . All funds of the board shall be deposited with the State Treasurer to the credit of the district, and all warrants drawn thereon by the president of the board shall specify the indebtedness the warrants are intended to liquidate, in part or in whole. The funds shall not be drawn from the treasurer except on the warrants of the president or chairman of the board while acting as president."
The author concluded that the above and other similar statutes requiring district funds to be deposited with the State Treasurer continued in effect. However, the opinion noted that such statutes were subject to future amendment by the Legislature.
Per Act No. 785 of 1985, LSA-R.S. 38:309, now generally governs the deposit of funds by districts. It provides, in pertinent part, the following:
 "All funds of the board may be deposited with the State Treasurer to the credit of the district unless otherwise provided . . . ." (Emphasis added).
As can be seen from the above, what was once a legal mandate for district funds to be deposited with the State Treasurer is now permissive and recognizes options afforded by other depository laws.
Article VI of the Louisiana Constitution of 1974 contains those provisions which govern the creation, functions, powers, and operations of local governmental units. Section 38 of Article VI provides for the retention and creation of levee districts. Article VI, Section 44, the definitional section, defines as a "political subdivision," a special district, such as a levee district.
While the jurisprudence is not uniform, levee districts have been held to be political subdivisions. Commander v. Board of Commissioners of Buras Levee District 11 So.2d 605 (La. 1942), Rehearing Denied; Musmeci v. American Automobile Insurance Company 146 So.2d 496 (La.App. 1962) Rehearing Denied. Further, this office has consistently opined that levee boards are local political subdivisions and political corporations of a local nature, and not state agencies of the Executive Branch of state government. See Attorney General Opinion Nos. 84-75, 83-6, 77-921, and 76-966A.
LSA-R.S. 39:1211 defines "local depositing authorities" to include all parishes, municipalities, boards, commissions, sheriffs and tax collectors, judges, clerks of court, and any other public bodies or officers of any parish, municipality or township, but it does not include the state and its elected officials, and state commissions, boards, and other state agencies.
Since levee districts are not state agencies, commissions, or boards, but rather political subdivisions of the state within the local governmental framework, it is our opinion that they constitute local boards falling squarely within the definition of "local depositing authority" in Section 1211. Read in pari materia with LSA-R.S. 38:309, we are of the opinion that levee district funds are subject to the local depository laws.
Mr. James Blankinship, Fiscal Analyst for the Louisiana Office of State Treasurer, advised that the only levee districts currently depositing funds with the State Treasurer are those very few with outstanding bonds against which the full faith in credit of the state is pledged. See Article VII, Section 9(C) of the Louisiana Constitution of 1974.
Your fourth question asks whether the District is required to solicit proposals or bids for the deposit of its funds. In answer to your question, we draw your attention to LSA-R.S.39:1214 which provides as follows:
"§ 1214. Bids to be invited
 Local depositing authorities shall, within 30 days prior to expiration of any contract that may be entered into under this Chapter, give written notice to each of the banks located in any parish which embraces all or any portion of the political subdivision in which the depositing authority is domiciled and for which it acts, setting forth the intention of the depositing authority to select a fiscal agency. This notice shall specify the time for which the fiscal agency contract shall be made and the conditions and terms of the fiscal agency contract proposed; and it shall invite bids under the terms and conditions of the proposal. A copy of the notice shall be published in the official journal of the depositing authority at least three times, the first notice to be published at least 15 days preceding the date for the selection of the fiscal agency."
As can be gleaned from the above, the District must give written notice to each of the banks located in the parish setting forth the terms and conditions of the contract proposed and an invitation for bids. The District must publish a copy of the notice in its official journal at least three times, the first notice to be published at least 15 days preceding the date for the selection of the fiscal agency.
Your fifth question asks whether the District is required to deposit its monies in a bank domiciled in Louisiana.
As previously discussed, LSA-R.S. 39:1214 requires the District to give written notice to each of the banks located in the parish. Section 1220(A) provides, in pertinent part, the following:
 "A. Local depositing authorities shall, except as otherwise provided in this Chapter, select as the depositories of their funds, a bank domiciled or having a branch office located in the parish or municipality or congressional district of the depositing authority, subject to the following conditions:"
In Tri-Parish Bank and Trust Company et al. v. City of Eunice343 So.2d 1121 (La.App. 3rd Cir. 1977) Writ Refused, the Court interpreted the provisions contained in LSA-R.S. 39:1214 and 1220. The issue presented was whether the City of Eunice (located in both St. Landry and Acadia Parishes) was required to select as its fiscal agent, a bank which was domiciled in that city or any bank domiciled in either of the parishes. The Court concluded:
 "In our opinion a fair reading of Section 1220, considering it with other pertinent statutory provisions and applying established rules of statutory construction, compels the conclusion that the Legislature intended to provide that a municipality must select as its fiscal agent a bank which is domiciled in that municipality. If the depositing authority is not a municipality, but it is a parish or a political subdivision located wholly within a parish, then it may select as its fiscal agent a bank which is domiciled anywhere in that parish. If the depositing authority is not a municipality, or a parish, or a state official or agency, and its geographical area extends over more than one parish, then we think Section 1220 authorizes it to select as its fiscal agent a bank which is domiciled in the congressional district of the depositing authority."
Based on the rationale in the Tri-Parish case, it is our opinion that LSA-R.S. 39:1220 requires the District to select as its fiscal agent, a bank domiciled or having a branch office located in the parish. The law does afford exceptions to this general rule in LSA-R.S. 39:1215 and 1216. Both sections authorize the consummation of private fiscal agency agreements and supplemental private fiscal agency agreements with banks located either within or without this state, subject to the statutory requirements contained in each section.
Your final question asks whether the safekeeping or unaffiliated bank holding security in the name of the depositing authority must be domiciled in Louisiana. If not, you ask whether the District can require said bank to be domiciled in this state.
In answer to your question, I refer you to LSA-R.S. 39:1224. Prior to its amendment by Act No. 772 of the 1989 Regular Session of the Louisiana Legislature, Section 1224 required the safekeeping bank to be domiciled within the state. However, with the passage of Act 772, the effective date of which was September 3, 1989, this domiciliary requirement was removed. Section 1224 now provides, in pertinent part, the following:
 "The bonds, certificates of indebtedness, paving certificates, promissory notes, evidence of participation in promissory notes, and other interest-bearing securities or obligations furnished as security, shall be deposited with the depositing authority or with an unaffiliated bank or trust company or federal reserve bank or any Federal Home Loan Bank or its successor; . . . . The depository bank or trust company or federal reserve bank must be acceptable to both the depositing authority and the fiscal agent bank, and, if these two cannot agree, the commissioner of financial institutions shall designate a depository."
We see no legal prohibition against the depositing authority limiting its selection of the safekeeping bank to an institution domiciled in Louisiana as long as the selection is acceptable to the fiscal agent bank. Failure to reach a mutual agreement will result in a selection made by the commissioner of financial institutions.
Trusting this adequately responds to your request, I am
Sincerely,
 RICHARD P. IEYOUB Attorney General
 BY: ROBERT E. HARROUN, III Assistant Attorney General
RPI/REH, III:lbw-0005R