O’NIELL, Chief Justice.
 

 The State is appealing from a judgment rejecting her demand and dismissing her suit. It is a suit to recover from the Buras Levee District a large area of land in the lower part of the Parish of Plaque-mines, on the west side of the Mississippi River.
 

 The question is whether the land in contest is within the limits of the levee district, as created and defined by Act No, 18 of 1894 and as redefined by Act No. 324 of 1938. The State Auditor and the Register of the State Land Office, believing the land to be in the levee district, made a transfer of it to the board of commissioners of the district on September 9, 1938. The board of commissioners leased the land, or a part of it, to the Delta Developing Company, Inc., on June 11, 1938; and the Delta Developing Company subleased it to the Gulf Refining Company on February 11, 1939. The sublease was ratified by the board and by the Police Jury of the Parish of Plaquemines. Under this sublease the Gulf Refining Company conducted extensive drilling operations at great expense, exceeding $700,000 when this suit was filed, and had brought in three or more producing oil wells,' of great value. Theretofore the land was of very little value. In fact it consisted mainly of- submerged areas which the state acquired by virtue of her inherent sovereignty.
 

 The suit was brought against the Board of Commissioners of the Buras Levee District, the Delta Developing Company, and the Gulf Refining Company, and in response to an exception of nonjoinder the State cited also the Police Jury of the Parish of Plaquemines. The State contends that the transfer by the State Auditor and the Register of the State Land Office to the board of commissioners of the levee district is null, on the ground that
 
 the
 
 land is below the southern boundary of the district, and hence that there is no authority in law for the transfer made by the State Auditor and the Register of the State Land Office on September 9, 1938. The Attorney General
 
 *956
 
 pleads that so far as Act No. 324 of 1938 purports to authorize the transfer of the land to the levee district, the act is unconstitutional because no such object or purpose is indicated in its title. Hence the State contends that the le'ase to the Delta Developing Company and the sublease to the Gulf Refining Company are null and should be canceled from the conveyance records of the parish.
 

 It appears that the Tide Water Associated Oil Company obtained from the State a lease, called State Lease No. 451, of either all or a part of the land in contest. Hence the Tide Water Company intervened in the suit, joining the State in her claim of ownership, and asserting its own rights under State Lease No. 451. But it appears also that thereafter the contest between the Gulf Refining Company and the Tide Water Associated Oil Company was eliminated by an agreement between them to make a certain division of the production from the land, no matter whether the State or the levee district should win the suit.
 

 The Buras Levee District was created and defined by Act No. 18 of 1894 thus: “That all the territory contained within the parish of Plaquemines' on' the right or west bank of the Mississippi river beginning at the lower line of Riceland plantation and extending to the Jump on the west or right bank of the said Mississippi river and including all lands belonging [to] and forming part of the parish of Plaque-mines south of a line drawn from the lower line of Riceland plantation to the limits of Harrang Canal on Bayou Lafourche, shall be embraced in the limits of a levee district to be known and styled ‘The Buras Levee District’
 

 In the eleventh section of the act all lands granted to the State by the United States as swamp or overflowed land, and all lands that had been forfeited to or bought in by the State for delinquent taxes, within the levee district, were granted to the board of commissioners, with the stipulation that the State Auditor and the Register of the State Land Office should issue instruments of conveyance for all of such lands when and as requested by the board or by the president thereof. By Act No. 205 of 1910, section 11 of the act of 1894 was amended so as to include in the grant to the levee district all lands within the district belonging to the State by virtue of her inherent sovereignty. The lands involved in this suit are, for the most part if not exclusively, lands belonging to the' State by virtue of her sovereignty.
 

 The so-called “Jump”, referred to in the statute, “to define the limits of said district”, is the place where a crevasse occurred in the west bank of the Mississippi River, in the year 1836. The crevasse created a navigable stream, called Grand Pass, which flows'from the Jump in a direction due south, to West Bay, which is an arm of the Gulf of Mexico. Grand Pass is also called Main Pass, to distinguish it from the several lateral passes — if we may borrow the term — which stem, from Grand Pass — from the west side — and flow westward, or southwestward, to or towards the Gulf. Some of these smaller passes, as we understand, gradually have petered out in the sea marsh without .reaching the Gulf.
 
 *958
 
 The most northern one of these branches of Grand Pass, remaining at the time when the levee district was created, was called Red Pass, which commenced on the west side of Grand Pass, at a place about 200 feet from the Mississippi River, and extended southwestward to or towards the Gulf. There was formerly a smaller pass further north, called Spanish Pass, which was probably a branch of Red Pass, but which had filled up before the year 1894.
 

 This suit is founded upon the State’s theory that Red Pass was originally and is yet the southeastern boundary of the Buras Levee District. The defendants’ contention, on the other hand, is that Grand Pass — being in fact as in name the Main Pass — was originally the eastern boundary of the southern part of the levee district,, extending from the Jump, southward, to West Bay; and they contend that this eastern boundary has been merely redefined by Act No. 324 of 1938 so as to include — as the statute declares — all of the land that has been made by the crevasse which produced Grand Pass, all' the way down to the lower bank of West Bay.
 

 There is evidence in the record that in olden times the term “Jump” was used generally as meaning not merely the place where the crevasse occurred but all of the area over which the waters of the crevasse extended southward to West Bay. On that theory it is not possible that the southern or southwestern boundary of the district was at Red Pass. There is some evidence in this record to support the State’s theory that Act No. 18 of 1894 should be construed so as to make Red Pass the southern boundary of the levee district. For example, an official map of the State made by William J, Hardee, civil engineer, in 1895, under authority of Act No. 143 of 1894, shows. Red Pass as being the southern limit of the Buras Levee District. On a map made by a civil engineer named deArmas in 1919 the southern limit of the levee district is placed at Red Pass. In Act No. 19 of 1904, the sole object of which act, as expressed in its title, was “To vest the Board of Commissioners for the Buras Levee District with authority to control Red Pass at the Jump, in the Parish of Plaquemines, and to maintain its closure for the protection of said District”, it is declared “that Red Pass extending from the juncture of the Jump with the Mississippi River, westward, be, and same is hereby declared to be the southern boundary of the Buras Levee District.” Section 1. It is conceded in the State’s brief that, if Red Pass was not already the southern boundary of the district, as defined- in the act' of 1894, the declaration in the act of 1904 that Red Pass shall be and is thereby declared to be the southern boundary of the Buras Levee District, is unconstitutional, because no such object or purpose was expressed or indicated in the title of the act of 1904. Article 31 of the Constitution of 1898 and of the Constitution of 1913 required that every act of the Legislature should have only one’ object and that the object should be expressed in the title of the act; and section 16 of Article III of the Constitution of 1921 requires that every statute shall have only one object and shall have a title indicative of its object. The Attorney General contends
 
 *960
 
 that the statement in Act No. 19 of 1904 that Red Pass was thereby declared to be the southern boundary of the Buras Levee District was an acknowledgment by the Legislature that the act of 1894, creating and defining the levee district, had fixed its southern limit at Red Pass. The wording of the reference to Red Pass, in the act of 1904, indicates that it was not intended merely as an acknowledgment that Red Pass was already the southern limit of the levee district; the wording of the act of 1904 expresses plainly the intention to fix the southern boundary of the levee district at Red Pass. The expression is simply this: “that Red Pass * * * be, and the same is hereby declared to be the southern boundary of the Buras Levee District.” To that extent the act of 1904 is plainly violative of article 31 of the constitution then in force.
 

 These evidences which we have referred to, and upon which the Attorney General depends to support his argument that the description in Act No. 18 of 1894, creating the Buras Levee District, should be construed as fixing the southern boundary of the district at Red Pass, are not convincing. On the contrary, the wording of the description itself in the act of 1894, together with the historical facts concerning the so-called Jump, convince us that the placing of the southern limit of the levee district at Red Pass, on Hardee’s map, was a mistake; and, as the map was made under statutory authority, it was. quite natural that this mistake should be repeated in the unconstitutional declaration in Act No. 19 of 1904, and again in the making of the de Armas map, in 1919. On that map is printed, along the north bank of Red Pass • — and along its meanders — this notation: “Present limit of Buras Levee Dist. RED PASS.” To call Red Pass the “present limit” of the Buras Levee District meant— necessarily — that at some previous time Red Pass was not the southern limit of the Buras Levee District. Which indicates strongly that John C. de Armas, who made the so-called de Armas map, and who was a civil engineer — and was the parish surveyor when he made the map — called Red Pass the “present limit” of the Buras Levee District because of the attempted location of the southern limit of the district in Act No. 19 of 1904, — or because of the erroneous location or the Hardee map. The inference is inescapable that when Mr. de Armas marked Red Pass on his map as the “present limit” of the Buras Levee District he meant that previously the lower limit of the levee district was located somewhere else; and the only statute in which the previous location could have been made was in Act No. 18 of 1894, creating and defining the levee district.
 

 It is a significant fact that the first section of Act No. 18 of 1894 begins by repealing that portion of Act No. 33 of 1879 which had created a levee district embracing the area which was to constitute the new levee district, to be known as the Buras Levee District. The first section of the act of 1894 begins thus: “That that portion of Act 33 of 1879, creating the First Levee District be repealed, and in lieu thereof be [it] enacted as follows: That all the territory contained within the parish of Plaque-
 
 *962
 
 mines on the right or west bank of the Mississippi river beginning at the lower line of Riceland plantation and extending to the Jump on the west or right bank of the said Mississippi river and including all lands belonging [to] and forming part of the parish of Plaquemines south of a line drawn from the lower line of Riceland plantation to the limits of Harrang Canal on Bayou Lafourche, shall be embraced in the limits of a levee district to be known and styled ‘Buras Levee District,’ ” etc.
 

 Act No. 33 of 1879 repealed Act No. S of the Extra Session of 1878 and created five new levee districts. Act No. S of the Extra Session of 1878 had created five levee districts, one of which districts, known as Levee District No. 2, consisted of all of the parishes and parts of parishes between the Mississippi River and Bayou Lafourche, and between the northern boundary of that district and the Gulf of Mexico, including that part of the Parish of Plaquemines which now forms the Buras Levee District. Likewise, by Act No. 33 of 1879, which re-pealed Act'No. 5 of the Extra Session of 1878, five new levee districts were created. The district called No. 3 consisted of all of the parishes and parts of parishes between the Mississippi River and Bayou Lafourche and between the north boundary of the district and the Gulf of Mexico, and included that part of the Parish of Plaque-mines embracing the territory which is now the Buras Levee District. The significance of this is that the levee districts which were the predecessors of the Buras Levee District extended southward to the Gulf of Mexico; and there is no good ■ reason why the Legislature, in creating the Buras Levee District, should have intended to leave out of it any land that was in the old district, extending to the Gulf of Mexico. If the southern boundary of the new district had been located at Red Pass the result would have been to leave outside of the district, between Red Pass and Grand Pass, an area of approximately 34 sections of land, or approximately 22,000 acres. There is no reason why the Legislature should have intended by Act No. 18 of 1894 to leave out of the new levee district that immense area of land which was in the old district, and which extended from Red Pass to Grand Pass, and to the Gulf of Mexico.
 

 To argue that the southern or southeastern boundary of the Buras Levee District was fixed at Red Pass, and not at Grand Pass, by Act No. 18 or 1894, is to ignore altogether the concluding part of the description in the act, thus: “and including all lands belonging [to] and forming part of the parish of Plaquemines south of a line drawn from the lower line of Riceland plantation to the limits of Harrang Canal on Bayou Lafourche.” Section 1. All lands south of that line means all lands between that line and-the Gulf.
 

 In the case of State v. Buck, 46 La.Ann. 656, 15 So. 531, decided in April 1894, which was only two months before the adoption of Act No. 18 of 1894, the court quoted at length the testimony of E. L. Corthell, a civil engineer, who was in charge of the construction of the South Pass Jetties at the mouth of the Mississippi River from May 1875, to July 1888, and who had made a thorough study of the his
 
 *964
 
 tory of the crevasse called the Jump, which occurred in 1836 and which produced the navigable stream called Grand Pass. The testimony in that case showed, and the court concluded, that the term “Jump” was .used sometimes if not generally as meaning the crevasse which had become Grand Pass, and as meaning also the land which was made by the crevasse, as far south as West Bay.
 

 In the case of Leovy v. United States, 177 U.S. 621, 20 S.Ct. 797, 44 L.Ed. 914, Leovy was prosecuted and convicted for constructing a dam across the end of Red Pass, near Grand Pass, in violation of the Act of Congress of September 19, 1890, 26 Stat. At L. 454, chap. 907, making it unlawful to dam a navigable stream without permission of the Secretary of War. The court annulled the conviction of Leovy on the ground that Red Pass was not a navigable stream; and at the same time the court found that Grand Pass was a navigable stream, and was known as the Jump. The court referred to Red Pass (loc. cits. 177 U.S. 622, 20 S.Ct. 797, 44 L.Ed. 914) thus: “which said Red Pass flows in the Gulf of Mexico from a certain navigable stream of the United States, known as the Jump, which said Jump is an outlet of the Mississippi river into the Gulf of Mexico.” And, on page 637 of 177 U.S., page 803 of 20 S. Ct., page 921 of 44 L.Ed., the court described the two passes thus: “Thus Grand Pass, of which Red Pass is a branch, might, in view of the volume of its water and of the nature and amount of the commerce carried on it, be held to be a navigable water of the United States. However that may be, our conclusion, upon the record now before us, is that Red Pass, in the condition it was at the time when this dam was built, was not shown by adequate evidence to have been a navigable water of the United States, actually used in interstate commerfce”.
 

 From our conclusion that Grand Pass was the eastern boundary of the southern end of the Buras Levee District, it results that the State has no title to any of the land claimed in her petition, unless it be a small area on the east side of Grand Pass. And the State has no title to that part of the land which she is claiming if Act No. 324 of 1938, which re-defined the limits of the Buras Levee District so as to include all of the lands made by the Jump crevasse to the lower boundary of West Bay, is constitutional.
 

 The State’s suit therefore, as to the small area on the east side of Grand Pass, depends upon the plea of the Attorney General that Act No.
 
 324
 
 of
 
 1938 is
 
 unconstitutional, so far as it purports to redefine the Buras Levee District so as to embrace “all of the lands made by the said ‘Jump’ crevasse to the lower boundary of West Bay”, and so far also as the act provides “that all lands not heretofore -conveyed to said Levee District shall henceforth be conveyed to it, according to all the terms and provisions of the relative granting statutes”. The reason for which the Attorney General contends that Act No. 324 of 1938 is unconstitutional, to the extent stated, is that the title of the act is not indicative of that object. The object stated in the title of the act is “To re-define the
 
 *966
 
 limits of the Buras Levee District as created by Act 18 of 1894; to prescribe certain powers and duties of the Board of Commissioners thereof; and to repeal all laws in conflict herewith.” The Attorney General cites Airey v. Tugwell, State Treasurer et al., 197 La. 982, 3 So.2d 99. But that decision does not support the plea of unconstitutionality made in this case. Airey, as receiver for a defunct oyster company, brought suit against Tugwell, as State Treasurer, and against the Board of Commissioners of the Buras Levee District, to cancel an instrument of conveyance by which the State Auditor and the Register of the State Land Office had transferred to the levee district 840.96 acres of land which had belonged to the oyster company' and had been sold to the State for unpaid taxes. Airey as receiver sued also to compel the State Treasurer and the Register of State Land Office to accept his tender of the amount sufficient to redeem the land which had been forfeited to the state. The receiver claimed the right to redeem the land under the provisions of Act No. 47 of 1938, which allowed the former owners to re-^ deem lands which had been sold to the State for nonpayment of taxes for the year 1936 or for those of previous years, so long as the title to the property remained in the State. The reason why the State Treasurer refused to permit Airey,.as receiver, to' redeem the property was that it was transferred to the Buras Levee District on September 9, 1938, under the provisions of section 11 of Act No. 18 of 1894, and under the provision in section 1 of Act No. 324 of 1938, “that all lands not heretofore conveyed to said Levee District shall henceforth be conveyed to it, according to all the terms and provisions of the relative granting statutes.” The court held that that provision in Act No. 324 of 1938 was unconstitutional, for two reasons, namely, first, because no such object or purpose was indicated in the title of the act, and, second, because the phrase, “according to all the terms and provisions of the relative granting statutes” had reference to section 11 of Act No. 18 of 1894 [as amended by Act No. 205 of 1910], which section had been declared repealed by Act No. 237 of 1924 in the case of State ex rel. Fitzpatrick v. Grace, Register of the State Land Office, 187 La. 1028, 175 So. 656. Act No. 237 of 1924 was an act providing for the redemption by the former owners of lands adjudicated to the State for unpaid taxes, and in the repealing clause of the statute it was declared that all laws or parts of laws, general or special, inconsistent with or contrary to the provisions of Act No. 237 of 1924 were thereby repealed. Hence it was held, in Airey v. Tugwell, that the granting provisions in all of the statutes creating levee districts throughout the state, such as the provisions in section 11 of Act No. 18 of 1894, so far as they referred to tax titles, were repealed by Act No. 237 of 1924, and could not be revived or amended except by being re-enacted and published at length. The court therefore held that, so far as Act No. 324 of 1938 provided that all lands not theretofore conveyed to the Buras Levee District should thenceforth be conveyed to it according to all of the terms and provisions of the relative granting statutes, the act was unconstitutional in so far as it purported to authorize the transfer to tbe
 
 *968
 
 levee district of lands sold to the State for unpaid taxes, because, as to such lands, the authority of the State Auditor and of the Register of the State Land Office to transfer them to any levee district was taken away by Act No. 237 of 1924. On that subject, in Airey v. Tugwell [197 La. 982, 3 So.2d 101], it was said:
 

 “In State ex rel. Fitzpatrick v. Grace, Register of the State Land Office, 187 La. 1028, 175 So. 656, it was held that Act 237 of 1924 repealed those provisions of the various acts creating levee boards, which authorized the Auditor and the Register of the State Land Office to transfer to the levee districts lands belonging to the state which had been acquired by the state through tax forfeitures.
 

 “So that the only authority which the Register of the State Land Office and the Auditor had for transferring the lands here involved to the Buras Levee District was Act 324 of 1938, the lands involved having been forfeited to the State for the nonpayment of taxes. Therefore, if Act 324 of 1938 is unconstitutional, the transfer of these lands to the Buras Levee District was null and void as having been made without authority of law, and the land was subject to redemption under Act .47 of 1938, on December 28, 1938, when plaintiff made the tender and asked for a certificate of redemption.”
 

 But that had nothing to do with the authority of the State Auditor and of the Register of the State Land Office to transfer to the several levee districts throughout the State any lands belonging to the State within the levee districts, respectively, other than lands which had been sold to the State for nonpayment of taxes.
 

 Act No. 324 of 1938 was declared constitutional, in Airey v. Tugwell, so far as ‘ the act redefined the limits of the Buras Levee District and so far as the act provided that all lands (other than lands which had been sold to the State for taxes) not theretofore conveyed to the Buras Levee District should thenceforth be conveyed to it according to the terms and provisions of the relative granting statutes. It is conceded by the Attorney General that the term “the relative granting statutes” has refer- ' ence to section 11 of Act No. 18 of 1894, as amended by Act No. 205 of 1910.
 

 To show that Act No. 324 of 1938 was not declared unconstitutional so far as it redefined the limits of the Buras Levee District, or so far as it provided that all lands not theretofore conveyed to the levee district (except lands which had been forfeited or sold to the State for nonpayment of taxes) should thenceforth be conveyed to the levee district according to the terms and provisions of the relative granting statutes, we quote the following paragraphs from Airey v. Tugwell:
 

 “But the fact that that portion of the statute [meaning the portion referring to tax titles] is invalid affords no reason for declaring the statute invalid as a whole, because that portion is separable from the other provisions of the act. If it be eliminated entirely, what remains may stand by itself as a valid enactment.
 

 * * * ‘ * * * *
 

 “The avowed object, aim, and purpose of Act 324 of 1938, as expressed in its title,
 
 *970
 
 is to redefine the limits of the Buras Levee District and to confer certain authority and powers upon the Board of Commissioners of that district. As we have already stated, the body of the act carries into effect that general object or aim.”
 

 The Attorney General relies upon' the paragraph in the opinion rendered in Airey v. Tugwell, declaring that Act No. 324 of 1938. is invalid so far as that clause in section 1 of the act which relates to the transfer of state-owned lands to the levee district is concerned. It is also declared in that paragraph “that otherwise the statute is constitutional.” The term “state-owned lands”, as used in that paragraph, has reference only to lands which the State acquired by forfeiture or sale to the State for nonpayment of taxes. Such lands are the only state-owned lands that the court was dealing with in Airey v. Tugwell. And the whole opinion rendered in the case shows that the provisions in Act No. 324 of 1938 that were declared unconstitutional were declared so only with reference to lands which the State had acquired by forfeiture or sale to the State for nonpayment of taxes.
 

 The purpose of the provision in Act No. 324 of 1938, that all lands not theretofore conveyed to the Buras Levee District should thenceforth be conveyed to it according to the terms and provisions of section 11 of Act No. 18 of 1894, as amended by Act No. 205 of 1910, was to make sure that that section of the statute would be applicable to lands that might be added to the area of the levee district by the “redefining” of its limits.
 

 The phrase in the title of Act No. 324 of 1938, “To re-define the limits of the Buras Levee District as created by Act 18 of 1894” was a sufficient indication of the object or purpose of the act to redefine the limits of the district so as to include all lands made by the so-called Jump crevasse, along the general direction of Grand Pass, to the lower boundary of West Bay.' Perhaps the reason for using the word “redefine” instead of “re-describe” was that the word “define” was used in the title of Act No. 18 of 1894.
 

 The judgment is affirmed.
 

 ODOM, J., takes no part.