826 So.2d 14 (2002)
PLAQUEMINES PARISH GOVERNMENT
v.
STATE of Louisiana and Chevron U.S.A., Inc.
Chevron U.S.A., Inc., et al.
v.
State of Louisiana, Plaquemines Parish Government, et al.
Nos. 2001-CA-1027, 2001-CA-1028.
Court of Appeal of Louisiana, Fourth Circuit.
April 10, 2002.
Rehearing Denied May 15, 2002.
Writ Denied September 13, 2002.
*17 L.V. Cooley, IV, Special Assistant Parish Attorney, Plaquemines Parish Government, Belle Chasse, LA, for Plaintiff/Appellee, Plaquemine Parish Government.
Thomas F. Gardner, Mary Ann Darr Wegmann, Roger C. Linde, Douglas A. Kewley, Gardner & Kewley, Metairie, LA, for Appellees, Lobrano Interests.
Robert E. Tarcza, Tarcza & Gelderman, LLC, New Orleans, LA, for Appellees, Chauvin Interest.
Richard P. Ieyoub, Attorney General for the State of Louisiana, E. Kay Kirkpatrick, Gary L. Keyser, Isaac Jackson, Jr., Assistant Attorneys General for the State of Louisiana, Baton Rouge, LA, and Patrick S. Ottinger, Special Assistant Attorney General, Ottinger, Hebert, Sikes & Hebert, L.L.C., Lafayette, LA, for Defendant/Appellant, State of Louisiana.
(Court composed of Judge JAMES F. McKAY, III, Judge DENNIS R. BAGNERIS, SR., Judge MAX N. TOBIAS, JR).
McKAY, Judge.
By Act No. 18 of 1894, Act No. 205 of 1910, and Act No. 324 of 1938 as amended, the State of Louisiana created the Buras Levee District (BLD) and provided for the transfer to its Board of Commissioners of all lands belonging to the State within the geographic limits of the BLD. These lands included a tract of land located within the fractional Section 20, Township 22 South, Range 30 East, and referred to herein as Tract 87. On June 11, 1938, the BLD granted a mineral lease, which affected Tract 87, to Delta Development Company (Delta).[1] Tract 87 was dry land at the time the mineral lease was granted to Delta; it has since become covered by the waters of the Gulf of Mexico. In 1956, Delta subleased the area to H.R. Cullen. On August 16, 1957, the State granted mineral lease No. 3263, which included Tract 87, directly to British American Oil Producing Company and Douglas B. Marshall. At all relevant times, there has been oil and gas production attributable to Tract 87.[2] Chevron is now the operator of both leases.
On April 15, 1975, the Board of Commissioners of the BLD was consolidated and merged into the Plaquemines Parish Government (PPG). As a result of this consolidation and merger, all properties of the BLD were transferred to its successor entity, PPG.
On April 17, 1990, PPG filed a petition for declaratory judgment asking the trial court to declare it to be owner of Tract 87, *18 owner of all future revenues derived from Tract 87 and for an order requiring Chevron to pay it all revenues held in suspense and all future revenues derived from Tract 87 attributable to PPG's recorded interest in Tract 87. On June 29, 1990, Chevron filed a petition in concursus contending that both the Cullen sublease and State Lease No. 3263 cover a tract of land (Tract 87) that is claimed by both the PPG and the State, and as such it was uncertain as to whom it should pay royalties for production attributable to Tract 87. Chevron deposited $1,374,628 into the Registry of the Court on the day it filed the concursus and has deposited additional sums since.
On September 6, 1990, the trial court consolidated PPG's petition and Chevron's concursus. On September 13, 2000, the trial court denied the State's motion for summary judgment or, in the alternative, motion in limine. On September 26, 2000, immediately prior to trial on the merits, the trial court denied the State's peremptory exception of no right of action. At trial, during the cross-examination of PPG's only witness to testify, PPG's attorney conceded that it was not seeking ownership of the water bottoms of Tract 87, but was seeking only ownership of the mineral rights. The State then moved for a judgment on the pleadings, which the trial court denied. The trial court then on its own motion proceeded to grant judgment in favor of PPG, recognizing the continuing validity of the BLD lease. The State now appeals.
On appeal, the State raises the following assignments of error: 1) the trial court erred in its denial of the State's peremptory exception raising the objection of no right of action and in its ruling that PPG obtained ownership of certain minerals affecting Tract 87 when the BLD merged and consolidated into PPG; 2) the trial court erred in its denial of the State's motion for summary judgment, or in the alternative, motion in limine, seeking the judicial declaration that La. R.S. 9:1151, the "Freeze Statute," did not apply to the facts of this case; 3) the trial court erred in applying La. R.S. 9:1152, a statute which no party pled and which cannot be constitutionally applied to the facts and circumstances of this case; 4) the trial court erred in its dismissal of the case on the State's motion for judgment on the pleadings, based upon PPG's judicial confession, and in its denial of the State's opportunity to put on evidence; and 5) the trial court erred in rendering its judgment without a proper description of Tract 87.

Assignment of Error No. 1
The objection of no right of action tests whether the plaintiff has a "real and actual interest" in the suit. Louisiana Paddlewheels v. Louisiana Riverboat Gaming Com'n, 94-2015 (La.11/30/94), 646 So.2d 885, 888. Stated another way, an exception of no right of action determines "whether the plaintiff belongs to the particular class to which the law grants a remedy for the particular harm alleged." Ferguson v. Dirks, 95-560 (La.App. 5 Cir. 11/28/95), 665 So.2d 585, 587. The exception is appropriate when the plaintiff does not have an interest in the subject matter of the suit or legal capacity to proceed with suit in a particular case. Gorum v. Louisiana Hosp. Ass'n Employee Ben. Trust, 95-468 (La.App. 3 Cir. 11/2/95), 664 So.2d 662, 664.
In the instant case, it is undisputed that the State conveyed Tract 87 and other lands to the BLD by an instrument dated September 9, 1938. In 1943, the Louisiana Supreme Court declared the September 9, 1938 conveyance instrument to be a valid and constitutional conveyance from the State to the BLD. State v. Gulf Refining Co., 202 La. 951, 13 So.2d 277 (1943). In that case, the State brought suit against *19 the BLD and others contending that the transfer by the State Auditor and the Register of the State Land Office was null on the ground that the land was below the southern boundary of the BLD and hence there was no authority for the transfer. The lower court rejected the State's contention and the Supreme Court affirmed the lower court's ruling. The 1938 conveyance from the State was supplemented in 1954. The purpose of this 1954 supplemental conveyance was to show the correct location of the lands conveyed in 1938 in accordance with an official survey map approved by the Register of the State Land Office on October 18, 1940. After describing the lands covered in the September 9, 1938 conveyance, the 1954 supplemental conveyance provides as follows:
All of the above lands, sections and townships are in accordance with the official map of T. 22 S. Rs. 30 & 31 E. and T. 23 S. Rs. 30 & 31 E., South Eastern District, West of River, Plaquemines Parish, Louisiana, made under the authority of the Register of the State Land Office, as provided by Act No. 232 of 1934, dated November, 1939, Jno. C. deArmas, Jr., Reg. C. E., approved in October 18, 1940 by the Register of the State Land Office.
Excepted therefrom are the bayous, lagoons, lakes, and bays and beds thereof under authority of R.S.9:1101.
This instrument corrects and supersedes act of transfer from State of Louisiana to Board of Commissioners of Buras Levee District dated September 9, 1938.
The State argues that Act No. 443 of 1954 (La. R.S. 9:1101) rescinded all transfers of navigable waters and their beds to any levee district. The trial court recognized that lands, including Tract 87, were conveyed to the BLD in 1938, that the BLD granted a mineral lease to Delta in 1938 (Delta Lease), and that the lease has been active and in continuous effect since that time. We agree with these findings and accordingly believe that PPG therefore had the right to assert causes of action affecting rights to lands conveyed to the BLD in 1938.
At the time of the 1938 conveyance from the State, the BLD was a separate and distinct political entity created by the legislature. The BLD had a governing board appointed by the governor and had special taxing authority; it had the power to sue and be sued, the authority to buy and sell property, issue bonds, and had the responsibility to fund the construction and maintenance of levees. The Louisiana Supreme Court deemed the BLD to be a political subdivision of the State. Commander v. Board of Com'rs of Buras Levee Dist., 202 La. 325, 11 So.2d 605 (1942).
After a special election held on April 15, 1975, the BLD was consolidated and merged into PPG under the authority of Article VI, Section 38 of the Constitution of the State of Louisiana of 1974 and under the terms and conditions and in the manner provided in Article VI, Section 16 of the Constitution of 1974. Article VI, Section 16 provides as follows:
Sec. 16 Special Districts and Local Public Agencies
Section 16. (A). Consolidation. A local governmental subdivision may consolidate and merge into itself any special district or local public agency, except a school district, situated and having jurisdiction entirely within the boundaries of the local governmental subdivision. Upon the consolidation and merger, the local governmental subdivision shall succeed to and be vested with all the rights, revenues, resources, jurisdiction, authority, and powers of the special district or local public agency. A consolidation and merger shall become effective only if *20 approved by a majority of the electors voting thereon in the local governmental subdivision as a whole and by a majority of the electors voting thereon in the affected district. A local public agency shall be consolidated and merged only if approved by a majority of the electors voting thereon in an election held for that purpose in the local governmental subdivision in which the agency is located.
(B). Assumption of Debt. If the special district of local public agency which is consolidated and merged has outstanding indebtedness, the authority provided by this Section shall not be exercised unless provision is made for assumption of the indebtedness by governing authority of the local governmental subdivision involved.
Furthermore, La. R.S. 38:513(A) provides as follows:
In addition to any rights, revenues, resources, jurisdiction, powers, authority, and functions granted by applicable provisions of this Chapter, any levee district reorganized, merged and consolidated with a parish pursuant to Article VI, Section 16 and 38 of the Constitution of Louisiana shall continue to have the rights, revenues, resources, jurisdiction, powers, authority, functions, and duties, including the levy and collection of any local assessment or forced contribution, authorized by law at the time of the reorganization, merger, and consolidation with a parish.
At this point, it would be useful to examine several basic principles contained in the Louisiana Mineral Code. According to La. R.S. 31:6: "Ownership of land does not include ownership of oil, gas, and other minerals occurring naturally in liquid or gaseous form, or of any elements or compounds in solution, emulsion, or association with such minerals. The landowner has the exclusive right to explore and develop his property for the production of such minerals and to reduce them to possession and ownership." La. R.S. 31:15 states that "[a] landowner may convey, reserve, or lease his right to explore and develop his land for production of minerals and to reduce them to possession." La. R.S. 31:16 provides that mineral rights are "real rights." Accordingly, ownership of "land" and ownership of mineral rights in such land are not necessarily one and the same.
The mineral lease granted by the BLD to Delta is a contract. Mirroring Section 10 of Article I of the United States Constitution, Section 23 of Article I of the Louisiana Constitution prohibits the legislature from passing any law that impairs the obligation of a contract. Furthermore, Sections 16 and 38 of Article VI of the Louisiana Constitution, La. R.S. 38:513, La. R.S. 9:1101, the Louisiana Mineral Code, La. R.S. 9:1151, and La. R.S. 9:1152 did not and could not invalidate the 1938 lease so long as it remained in existence. Although Tract 87 was once dry land and is now part of the water bottom of the Gulf of Mexico, no law or contract invalidated the 1938 lease.
In the instant case, the State conveyed Tract 87 to the BLD in 1938. The BLD granted a mineral lease, which included Tract 87. In 1975, the BLD was consolidated into PPG. These facts when considered in connection with the various legislative acts, statutes, and jurisprudence cited above all support the proposition that PPG had a right to bring its action. Accordingly, we find no error in the trial court's denying the State's peremptory exception of no right of action and in its ruling that PPG obtained ownership of certain mineral rights affecting Tract 87 when the BLD merged and consolidated into PPG.

*21 Assignment of Error No. 2
The State contends that the trial court erred in its denial of the State's motion for summary judgment, or, in the alternative, motion in limine, seeking a declaration that La. R.S. 9:1151, the "Freeze Statute", did not apply to the facts and circumstances of the instant case. At the time suit was filed and at the time of trial, La. R.S. 9:1151 provided as follows:
In all cases where a change occurs in the ownership of land or water bottoms as a result of the action of a navigable stream, bay or lake in the change of its course or bed, or as a result of accretion, dereliction, or other condition resulting from the action of a navigable stream, bay or lake, the new owner of such lands or water bottoms, including the state of Louisiana, shall take the same subject to and encumbered with any oil, gas and/or mineral lease covering and affecting such lands or water bottoms, and subject to the mineral and royalty rights of the lessors in such lease, their heirs, successors and assigns, the right of the lessee or owners of such lease and the right of the mineral and royalty owners of thereunder to be in no manner abrogated or affected by such change in ownership.
By Act No. 963 of the 2001 Regular Session of the Louisiana Legislature, La. R.S. 9:1151 was amended to read as follows:
In all cases where a change occurs in the ownership of land or water bottoms as a result of the action of a navigable stream, bay, lake, sea, or arms of the sea in the change of its course, bed or bottom, or as a result of accretion, dereliction, erosion, subsidence, or other condition resulting from the action of a navigable stream, bay, lake, sea, or arm of the sea, the new owner of such lands or water bottoms, including the state of Louisiana, shall take the same subject to and encumbered with any oil, gas, or mineral lease covering and affecting such lands or water bottoms, and subject to the mineral and royalty rights of the lessors in such lease, their heirs, successors, and assigns; the right of the lessee or owners of such lease and the right of the mineral owners thereunder shall be in no manner abrogated or affected by such change in ownership.
(emphasis added.)
It is undisputed that there was a genuine factual issue as to causation of the land loss. The State concedes as much in its appellate brief when it states: "While there is disagreement as to the physical process or processes which have caused or resulted in, or contributed to, the undisputed coastal land loss, no one disputes that the land has in fact been lost or that Tract 87 is now entirely within the open waters of the Gulf of Mexico." Because there is no evidence as to exactly how Tract 87 came to be covered by the open waters of the Gulf of Mexico, the trial court was correct in denying the State's motion for summary judgment, and in the alternative, its motion in limine.

Assignment of Error No. 3
The State contends that the trial court erred in applying La. R.S. 9:1152, a statute which no party pled and which the State alleges cannot be constitutionally applied to the facts and circumstances of this case. La. R.S. 9:1152 provides:
A. With regard to lands previously acquired or which may be acquired hereafter by the state of Louisiana from an agency or political subdivision of the state due to the subsidence or erosion or other action of a navigable river, stream, bay, or lake or arm of the sea occurring after the effective date of the Louisiana State Constitution of 1921 and which are not subject to a mineral lease granted *22 by such agency or political subdivision, or its governmental predecessor, on the effective date hereof, the state of Louisiana hereby grants to the agency or political subdivision, or its governmental successor, from which it acquired or may acquire such lands an imprescriptible and inalienable mineral servitude affecting all minerals underlying the lands so acquired. Any such servitude shall be treated as having been granted on the date of the change in ownership of such lands and the agency or political subdivision holding such servitude granted the authority to lease or otherwise manage the mineral rights affected thereby in accordance with law.
. . . . . . .
C. Nothing contained herein shall have the effect of modifying or repealing R.S. 9:1151.
La. R.S. 9:1152 clearly applies to the circumstances of the instant case. The BLD granted a mineral lease on land that later became water bottoms. While the State is now the owner of the water bottoms (due to the fact that somehow Tract 87 is now under the open waters of the Gulf of Mexico), the mineral rights are retained by PPG (successor to the BLD) as long as its lease granted in 1938 is in effect.
The State cannot challenge the constitutionality of La. R.S. 9:1152. As a general rule, a public body like the State is without interest or right to question the constitutionality of statute which it is entrusted to administer. See Dore v. Tugwell, 228 La. 807, 84 So.2d 199 (1955). Secondly, the constitutionality of La. R.S. 9:1152 was not properly raised at the trial court level. Louisiana jurisprudence mandates that an attack upon the constitutionality of a statute must first be presented in the trial court. Also, the unconstitutionality of a statute must be specially pleaded and the grounds for the claim particularized. Williams v. State, Dept. of Health and Hospitals, 95-0713 (La.1/26/96), 671 So.2d 899. The record in this case is devoid of any evidence to suggest that this challenge was contained in a pleading or that the matter was ever raised at the trial court level. Accordingly, we find this assignment of error is without merit.

Assignment of Error No. 4
The State contends that the trial court erred in its dismissal of the case on the State's motion for judgment on the pleadings and in its denying the State an opportunity to put on evidence. The trial court reviewed the pleadings, heard some evidence and admissions from the parties and argument from counsel. After denying the State's motion for judgment on the pleadings, the trial court ruled in favor of PPG on its own motion. In its view, as expressed in its reasons for judgment, the trial court concluded from the law and undisputed facts established that there was continuous ownership of Tract 87 mineral rights by the BLD since the Delta lease was granted in 1938 and ownership of these rights did not change as a consequence of the merger and consolidation of the BLD into PPG in 1975. The State admitted that the BLD lease had been granted. There was no dispute that it covered Tract 87 and there was no dispute that the State lease, which was granted in 1957, purportedly sought to cover Tract 87. The trial court concluded from the State's own contentions that the BLD was a state agency and that the State's attempt to release Tract 87 in 1957 was null and void. Accordingly, the trial court clearly had authority to issue a ruling on its own motion when it concluded that the State's lease was null and void.

*23 Assignment of Error No. 5
The State contends that the trial court erred in rendering its judgment without a proper legal description of Tract 87. The State's contention is based on La. C.C.P. art. 1919, which states: "All final judgments which affect title to immovable property shall describe the immovable property affected with particularity."
In its pleadings, the State did not seek declaration of the boundaries of Tract 87. The thrust of its pleadings is that regardless of the physical boundaries of Tract 87, it is now part of the water bottom of the Gulf of Mexico; therefore, it claims the ownership of the water bottoms and the minerals beneath. It is correct that it owns the water bottoms, but the minerals under the water bottom of Tract 87, regardless of its boundaries, are leased to parties who hold the mineral rights pursuant to contracts of lease entered into by a lessor who, at the time of executing the lease, were parties who had the right to lease the property. Therefore, the trial court did not have to describe the boundaries of Tract 87 which La. C.C.P. art. 1919 would ordinarily mandate. The trial court's decision was not one that affected title to immovable property. Accordingly, this assignment of error is without merit.

DECREE
For the foregoing reasons, the judgment of the trial court is affirmed.
AFFIRMED.
NOTES
[1] For the record, we note that the transfer of lands to the BLD authorized by Act No. 324 of 1938 did not take place until September 9, 1938. However, the BLD granted a mineral lease, which covered some of these lands on June 11, 1938. This is valid under the doctrine of after acquired title. Ordinarily, where one sells the property of another and the rule is equally applicable to the granting or sale of mineral leases and later acquires title to the property sold by him, the title vests immediately in his vendee. St. Landry Oil & Gas Co. v. Neal, 166 La. 799, 118 So. 24 (1928).
[2] There is no actual production on Tract 87. However, Tract 87 is part of a unit which attributes a portion of its production to Tract 87.