972 So.2d 363 (2007)
CHEVRON U.S.A., INC.
v.
STATE of Louisiana, et al.
No. 2007-CA-0673.
Court of Appeal of Louisiana, Fourth Circuit.
November 21, 2007.
*364 Joe B. Norman, J. Patrick Morris, Jr., Collette N. Ross, Liskow & Lewis, New Orleans, LA, for Chevron U.S.A. Inc.
L.V. Cooley IV, Assistant Parish Attorney, Belle Chasse, LA, for Plaquemines Parish Government.
Robert E. Tarcza, Tarcza & Associates, L.L.C., New Orleans, LA, FOR Chauvin Family Interests.
Robert L. Lobrano, Braithwaite, LA, in Proper Person.
Charles C. Foti, Attorney General, E. Kay Kirkpatrick, Assistant A.G., La. Department of Justice, Baton Rouge, LA, Patrick S. Ottinger, Special Assistant Attorney General, Stuart M. Simoneaud, Special Assistant Attorney General, Renee A. Dupre', Special Assistant Attorney General, Ottinger Hebert, L.L.C., Lafayette, LA, and Stephen C. Braud, Ballay, Braud & Colon, PLC, Belle Chasse, LA, for the State of Louisiana, the State Mineral Board and the State Department of Natural Resources.
Court Composed of Judge PATRICIA RIVET MURRAY, Judge JAMES F. McKAY, III, and Judge MAX N. TOBIAS, JR.
MAX N. TOBIAS, JR., Judge.
In this concursus proceeding, the defendants/appellants, State of Louisiana, State Mineral Board, and State Department of Natural Resources (hereinafter collectively referred to as the "State"), appeal from a summary judgment in favor of the plaintiffs/appellees, Chevron U.S.A., Inc. ("Chevron"), Plaquemines Parish Government ("PPG"), Chauvin Family Interests ("Chauvin"), and Robert L. Lobrano ("Lobrano"), on the basis of res judicata. After reviewing the record and applicable law, we affirm the judgment rendered below.
By Act No. 18 of 1894, Act No. 205 of 1910, and Act No. 324 of 1938 as amended, the State of Louisiana created the Buras Levee District ("BLD") and provided for *365 the transfer to its Board of Commissioners of all lands belonging to the State within the geographic limits of the BLD. These lands included a tract of land located within the SW 1/4 of Section 13 and NW 1/4 of Section 24 of Township 22 South, Range 30 East, referred to herein as Tract 1. On June 11, 1938, the BLD granted a mineral lease, which affected Tract 1, to Delta Development Company (Delta).[1] The State subsequently supplemented the 1938 transfer on 1 July 1954. The lands in question were ultimately subleased to Chevron and, at all relevant times, there has been oil and gas production attributable to Tract 1, except for temporary cessation caused by Hurricanes Katrina and Rita.
On April 15, 1975, the Board of Commissioners of the BLD was consolidated and merged into the PPG. As a result of this consolidation and merger, all properties of the BLD were transferred to its successor entity, PPG, which is the governing authority for the merged entity. The BLD was not dissolved by the merger and continues in its ownership rights in lands transferred by the State in 1938. It is undisputed that Tract 1 is covered by the 1938 BLD/Delta lease and that the lease is valid and presently in effect.
The 1938 conveyance of lands to the BLD also included property identified as Tract 87, which like Tract 1, is covered by the 1938 BLD lease and ultimately subleased to Chevron. Chevron operates Tract 87 under the same mineral lease from the BLD as Tract 1.
In 1990, PPG sued the State, seeking a resolution to competing claims to minerals on the basis that Tract 87 had become a waterbottom. In that matter, Chevron held a competing lease and had previously filed a concursus proceeding to determine to whom it should make royalty payments: the State or PPG. The two cases were consolidated for trial [hereinafter referred to as the "Tract 87 litigation"].
At trial, PPG clarified that it did not seek ownership of the waterbottoms underlying Tract 87, but rather sought confirmation of its ownership of the mineral rights. On its own motion, the trial court entered judgment for PPG, finding, inter alia, that the BLD lease was valid. This court affirmed the decision. See Plaquemines Parish Government v. State, 01-1027, 01-1028 (La.App. 4 Cir. 4/10/02), 826 So.2d 14, writ denied, 02-1304 (La.9/13/02), 824 So.2d 1170, 1171. In doing so, the court stated:
In the instant case, it is undisputed that the State conveyed Tract 87 and other lands to the BLD by an instrument dated September 9, 1938. In 1943, the Louisiana Supreme Court declared the September 9, 1938 conveyance instrument to be a valid and constitutional conveyance from the State to the BLD. State v. Gulf Refining Co., 202 La. 951, 13 So.2d 277 (1943). In that case, the State brought suit against the BLD and others contending that the transfer by the State Auditor and the Register of the State Land Office was null on the ground that the land was below the southern boundary of the BLD and hence there was no authority for the transfer. The lower court rejected the *366 State's contention and the Supreme Court affirmed the lower court's ruling. The 1938 conveyance from the State was supplemented in 1954. The purpose of this 1954 supplemental conveyance was to show the correct location of the lands conveyed in 1938 in accordance with an official survey map approved by the Register of the State Land Office on October 18, 1940. After describing the lands covered in the September 9, 1938 conveyance, the 1954 supplemental conveyance provides as follows:
All of the above lands, sections and townships are in accordance with the official map of T. 22 S. Rs. 30 & 31 E. and T. 23 S. Rs. 30 & 31 E., South Eastern District, West of River, Plaquemines Parish, Louisiana, made under the authority of the Register of the State Land Office, as provided by Act No. 232 of 1934, dated November, 1939, Jno. C. deArmas, Jr., Reg. C.E., approved in October 18, 1940 by the Register of the State Land Office. Excepted therefrom are the bayous, lagoons, lakes, and bays and beds thereof under authority of R.S. 9:1101.
This instrument corrects and supersedes act of transfer from State of Louisiana to Board of Commissioners of Buras Levee District dated September 9, 1938.
Id. at pp. 4-5, 826 So.2d at 18-19 [emphasis added].
At all pertinent times, Chevron has maintained continuous production under and for the BLD lease arising from or attributable to various tracts covered by the lease, as a single mineral interest under one mineral lease. Prior to filing the instant proceeding, Chevron sought confirmation from the State that it would not contest the validity of the lease or the BLD ownership of the minerals produced by Chevron from Tract 1. The State refused to provide such assurance and advised Chevron that it considered Tract 1 as unleased property belonging to the State. Faced with competing claims to the payments resulting from Tract 1 production, Chevron filed a petition for concursus and for declaratory judgment and deposited royalty payments into the registry of the court. The State argued that the merger and consolidation of the BLD and PPG in 1975 constituted an impermissible alienation of state minerals and that it is now entitled to the mineral revenues attributable to Tract 1 as an unleased owner.
Chevron moved for summary judgment on several grounds. The trial court granted the motion, stating:
Because I believe that your distinction between a lease as a corporeal immovable and individual tracts of land is the compelling argument in terms of what was litigated in the prior litigation. In view of the fact that a contrary ruling would, in fact, lead to absurd consequences and that is a re-litigation of thousands, and thousands, and thousands of leases. And not only leases, but as you point out in the '57 [sic] litigation, the prior litigation, individual wellheads, well. I don't think  I think that would be an absurd consequence.
I'm going to grant the argument on the basis of res judicata, allow you gentlemen to make your arguments in the Fourth Circuit. And if it comes back, we'll address the 1151, 1152 arguments. If it doesn't come back wonderful.
The State filed the instant appeal.
The State has assigned two errors for review. The State argues that the trial court erred by holding that this matter is barred by res judicata and that the court erred in granting summary judgment because there are disputed issues of material *367 fact regarding the State's claim to the minerals in and under Tract 1.
The principle of res judicata is found in La. 13:4231, which States:
Except as otherwise provided by law, a valid and final judgment is conclusive between the same parties, except on appeal or other direct review, to the following extent:
(1) If the judgment is in favor of the plaintiff, all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished and merged in the judgment.
(2) If the judgment is in favor of the defendant, all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished and the judgment bars a subsequent action on those causes of action.
(3) A judgment in favor of either the plaintiff or the defendant is conclusive, in any subsequent action between them, with respect to any issue actually litigated and determined if its determination was essential to that judgment.
In Burguieres v. Pollingue, 02-1385, pp. 7-8 (La.2/25/03), 843 So.2d 1049, 1053, the Louisiana Supreme Court stated:
The civilian concept of res judicata is based upon a presumption of correctness. Avenue Plaza, L.L.C. v. Falgoust, 96-0173, p. 6 (La.7/2/96), 676 So.2d 1077, 1080; Terrebonne Fuel & Lube, Inc. v. Placid Refining Co., 95-0654, p. 12 (La.1/16/96), 666 So.2d 624, 632; Welch v. Crown Zellerbach Corp., 359 So.2d 154, 156 (La.1978); Peter Wilbert Arbour, Comment, The Louisiana Concept of Res Judicata, 34 La. L.Rev. 763, 764 (1974). Under this concept, the prior legislation established that a decided case precluded a second suit only if the second suit involved the same parties, the same cause, and the same object of demand as the prior suit. Avenue Plaza at p. 6, 676 So.2d at 1080; Terrebonne Fuel at p. 12, 666 So.2d at 632. In contrast to the civil law, the common law doctrine of res judicata is based on a concept of extinguishment of the cause of action. Terrebonne Fuel at p. 12, 666 So.2d at 631; Arbour, 34 La. L.Rev. at 764 (1974). Under the federal res judicata law, a judgment bars a subsequent suit if both cases involve the same parties, the prior judgment was rendered by a court of competent jurisdiction, the prior decision was a final judgment on the merits, and the same cause of action is at issue in both cases. Terrebonne Fuel at 633. Thus, as a result of our civilian heritage, Louisiana's res judicata law, at least prior to the 1990 amendment, was much narrower in scope than its common law counterpart. Terrebonne Fuel at p. 11-12, 666 So.2d at 631; Welch at 156.
Most of the controversy and confusion in Louisiana surrounding res judicata prior to the 1990 amendment concerned whether there was an "identity of cause." With the 1990 amendment to the res judicata statute, however, the chief inquiry is whether the second action asserts a cause of action which arises out of the transaction or occurrence that was the subject matter of the first action. Avenue Plaza at p. 6, 676 So.2d at 1080. See also La. R.S. 13:4231 cmt. a (1990). While this is the central inquiry under the current statute, it is not the only inquiry. A reading of La. R.S. 13:4231 reveals that a second action is precluded when all of the following are satisfied: (1) the judgment is valid; (2) the judgment is final; (3) the parties *368 are the same; (4) the cause or causes of action asserted in the second suit existed at the time of final judgment in the first litigation; and (5) the cause or causes of action asserted in the second suit arose out of the transaction or occurrence that was the subject matter of the first litigation.
The State concedes that the first three requirements exist: the judgment rendered in the Tract 87 litigation is valid; the Tract 87 judgment is final; and the parties in both matters are the same. However, the State argues that (1) the appellees' claim to the minerals under La. R.S. 9:1151 and La. R.S. 9:1152 did not exist at the time of the Tract 87 litigation, and (2) the causes of action asserted in the instant case do not arise out of the same transaction or occurrence that was the subject matter of the Tract 87 litigation.
The primary problem with the State's position is that beginning in 1943, the courts have recognized the validity of the 1938 BLD lease. See State v. Gulf Refining Co., 202 La. 951, 13 So.2d 277 (1943). It is uncontested that the 1938 BLD lease contains Tracts 1 and 87 that have been leased to Chevron along with a number of other tracts. The State argues that the cause of action asserted by the appellees in the present action does not arise out of a transaction or occurrence which was the subject matter of the Tract 87 litigation. The State is incorrect because it narrowly focuses on Tract 87 versus Tract 1. The real cause of action in both cases is the immovable known as the 1938 BLD lease, not any single tract of land contained therein.
This is exactly the type of case to which res judicata applies. Res judicata promotes judicial efficiency and final resolution of disputes by preventing needless relitigation. Terrebonne Fuel, supra, at p. 12, 666 So.2d at 631. To find otherwise would permit the State to file a series of separate actions challenging the ownership of mineral rights in each and every tract contained in the 1938 BLD Lease. Thus, we find that this matter is barred by res judicata.
In its second assignment of error, the State argues that there are genuine issues of material fact as to whether there were any bayous, lagoons, lakes, and bays situated within the confines of Tract 1 at the time of the conveyance to the BLD.[2] For the reasons below, we find no merit in this assignment of error.
In connection with its motion for summary judgment, PPG filed into the record, an affidavit executed by George J. Castille, III, who holds a Ph.D. in geography, and is employed as a geographer. Dr. Castille was asked by PPG to render an expert opinion on the existence of land as of September 1938 in the area known as Tract 1. After reviewing numerous maps and photographs, Dr. Castille concluded that at the time of the transfer of Tract 1 to the BLD in 1938, the entirety of Tract 1 was land. However, to the extent that Tract 1 may have contained certain bodies of water, we note that the 1938 transfer specifically excluded the bayous, lagoons, lakes, and bays and beds thereof under authority of La. R.S. 9:1101. Therefore, the fact that these types of water bodies may have been present in Tract 1 at the time of the initial transfer is of no moment.
Based on the foregoing, we affirm the judgment of the trial court. Because we find that the present matter is precluded *369 by res judicata, we pretermit discussion of any other issues raised in this case.
AFFIRMED.
MURRAY, J., concurs with reasons.
MURRAY, J., concurring.
Although I agree with the result, I concur because I do not feel the fact there might have been a water bottom in Tract 1 has any relevance to the disposition regarding Tract. 87.
NOTES
[1] For the record, we note that the transfer of lands to the BLD authorized by Act No. 324 of 1938 did not take place until September 9, 1938. However, the BLD granted a mineral lease, which covered some of these lands on June 11, 1938. This is valid under the doctrine of after acquired title. Ordinarily, where one sells the property of another and the rule is equally applicable to the granting or sale of mineral leases and later acquires title to the property sold by him, the title vests immediately in his vendee. St. Landry Oil & Gas Co. v. Neal, 166 La. 799, 118 So. 24 (1928).
[2] The State also contends that Little Pass de Wharf, as well as other small lakes and lagoons, traverse and are situated in Tract 1.